[No. 11965.    Department One.    October 9, 1914.]

## BARR P. STEWART et al., Appellants, v. BANK OF ENDICOTT et al., Respondents.[1]

HUSBAND AND WIFE—COMMUNITY PROPERTY—PRESUMPTIONS—DE-
SCENT—ACTIONS TO RECOVER. The presumption is that personal prop-
erty held by a married man at the time of his death was the com-
munity property of himself and surviving wife, under Rem. & Bal.
Code, §§ 5915 and 5916, defining the separate property of both hus-
band and wife as that acquired by either before marriage, or by gift,
bequest, devise, or descent, and Id., § 5917, declaring that all other
property is community property; and an action by the husband's
heirs to recover the same from the administrator, to state a cause
of action, must show that it was his separate property.

SAME — COMMUNITY PROPERTY — PERSONALTY — DESCENT — TRUST
AGREEMENT TO CIRCUMVENT LAW OF DESCENT—EQUITABLE ESTATES—
TRUSTS. A trust agreement by a married man disposing of all the
personal community property, to be held in trust for him during his
life, but held by the trustees at all times subject to his disposition
and control, and acknowledging it to be his property, and extending
the trust for the benefit of his wife during her life, without any
power of disposition by her, together with his will bequeathing all
of it to his own heirs to the exclusion of those of his wife, is an
attempt to circumvent Rem. & Bal. Code, § 5917, forbidding the hus-
band from devising by will more than half of the community per-
sonal property, although he has the control and power of disposition
of such property during life, and Id., § 1342, providing that on the
death of either husband or wife, one-half of the community prop-
erty shall descend to the survivor; since the trust terminated at
his death, and his equitable interest at the time of his death, being
governed by the rules of descent for legal estates, was subject to the
law of descent and vested one-half in the surviving wife.

Appeal from a judgment of the superior court for Whit-
man county, McCroskey, J., entered February 26, 1914,
dismissing an action to recover possession of personal prop-
erty, upon sustaining a demurrer to the complaint. Affirmed.

*F. L. Stotler* and *John Pattison*, for appellants.

*J. N. Pickrell*, for respondents.

[1]Reported in 143 Pac. 458.

Gose, J.—This is an action to recover the possession of promissory notes, certificates of deposit, and money, amounting in the aggregate to more than $27,000. The defendants severally demurred to the complaint, for the reason that it does not state facts sufficient to constitute a cause of action. The demurrers were sustained, and the plaintiffs electing to stand on their complaint, a judgment was entered dismissing the action. The plaintiffs appealed.

The alleged cause of action has its basis in a written instrument executed by the several appellants and one Alexander Stewart in his lifetime. The instrument, omitting signatures and the attestation clause, is as follows:

"Whereas, the undersigned, Alex Stewart, of Waitsburg, Washington, has heretofore caused to be conveyed and transferred to Barr P. Stewart, Elizabeth C. Stewart, Charles B. Stewart, Edgar L. Stewart and Miner F. Stewart, certain real and personal property, situate both in the states of Florida and Washington, and other states,

"And Whereas, all of the property, both real, personal and mixed, now held and possessed by Barr P. Stewart, Elizabeth C. Stewart, Charles B. Stewart, Edgar L. Stewart, Miner F. Stewart, was received indirectly in trust from Alex Stewart *and belongs to the said Alex Stewart.*

"And Whereas, it is understood between the parties hereto that all property, both real, personal and mixed, *held and possessed* by Barr P. Stewart, Elizabeth C. Stewart, Charles B. Stewart, Edgar L. Stewart, Miner F. Stewart, *at the time of the death of said Alex Stewart,* should he not survive them shall vest in said parties in fee and become their property absolute, charged only with the maintenance of Maria C. Stewart,

"And Whereas, it is understood between the parties hereto that all of said property, both real, personal and mixed, now held and possessed by the said Barr P. Stewart, Elizabeth C. Stewart, Charles B. Stewart, Edgar L. Stewart, Miner F. Stewart, and to be hereafter caused to be conveyed to them by the said Alex Stewart, *and held and possessed in trust for him, shall be at all times during the life of said Alex Stewart under his control and direction,* and the said parties herein named holding and possessing the same shall

convey and dispose of the same under the order and direction of the said Alex Stewart, and to any party or parties named by him.

"AND WHEREAS, Maria C. Stewart, wife of Alex Stewart is not now of sound and disposing mind and memory, and is being cared for and looked after by the said Alex Stewart, it is understood that *should she survive Alex Stewart*, that all of the property, both real, personal and mixed, heretofore and hereafter caused to be conveyed and transferred to Barr P. Stewart, Elizabeth C. Stewart, Charles B. Stewart, Edgar L. Stewart, Miner F. Stewart, shall be and remain *a trust* fund in their hands for the maintenance and support of the said Maria C. Stewart so long as she lives.

"Now THEREFORE, It is understood and agreed by and between Alex Stewart, as party of the first part, and Barr P. Stewart, Elizabeth C. Stewart, Charles B. Stewart, Edgar L. Stewart, Miner F. Stewart, as parties of the second part,

"WITNESSETH: That first party, *being in fact owner of all the property*, both real and personal now held and possessed by second parties in both the states of Washington and Florida *in trust for first party*, and the second parties are to hereafter hold and possess other property, both real, personal and mixed, conveyed and transferred to them *in trust for first party*. All of said property is held and possessed and to be held and possessed by second parties, *subject at all times to the control and disposition* of first party during his lifetime, and in order that first party do have control and disposition of said property, second parties agree to convey and transfer said property at any time to whomsoever directed by first party and *pay the proceeds thereof to first party*.

"The sole and only purpose of this agreement is to secure the maintenance and support *of first party* and his invalid and demented wife in comfort and plenty so long as each of them shall live, that is, furnish them a good home with all the comforts of life and proper care in their declining years; after which it is the desire of first party that the remainder thereof shall go to second parties as their possession and the records shall then show.

"It is expressly understood that all of the parties hereto in the execution of this agreement fully assent and agree to all of the terms of this agreement as well as all the facts

herein recited in relation thereto and that the same is binding both severally and jointly."

We have italicized portions of the instrument to give prominence to its dominant purpose. After setting out this instrument, the complaint alleges that Alexander Stewart died in the state of Florida, in the month of November, 1912; "that under and by virtue of said agreement hereinbefore specifically set out, said parties of the second part, being the plaintiffs herein, became the owners of, and under and by virtue of said agreement and in pursuance thereof, said Alex Stewart transferred to them under said agreement, during his lifetime, the following described personal property, to wit:" This is followed by a description of the notes and certificates of deposit and by a statement of the amount of money in respondent bank. It is further alleged that, in January, 1910, Alexander Stewart made a last will and testament, setting it forth *in haec verba;* that in March, 1913, the superior court of Whitman county entered an order, admitting the will and testament to probate and appointing the respondent Sherman administrator of the estate with the will annexed; that he qualified and is acting as such administrator; that he filed a verified inventory embracing the property in controversy, in which he represents that it was the community property of his intestate and his surviving widow Maria C. Stewart, and that he represented it was all the property belonging to the estate that had "come to his knowledge or possession." It is further alleged that the respondents have possession of the property sought to be recovered, that they have had such possession "since before the death of said Alexander Stewart," and that they have refused upon demand to deliver it to the appellants.

We think the demurrer was properly sustained. It will be observed the agreement recites that the property belongs to Alexander Stewart; that all property which he should transfer to the appellants before his death and which is "held and possessed" by them "at the time of the death of the said

Alexander Stewart," should he not survive them, shall vest in them in fee, charged with the maintenance of his demented wife. It further recites that whatever property is "held and possessed by them" is "in trust for him" and under his direction and control during his lifetime, and that such property, should his wife survive him, shall be and remain a trust fund for her maintenance and support. It reiterates that the deceased is "in fact owner of all the property" theretofore transferred to the appellants or thereafter to be transferred to them, to be held and possessed by them "in trust for first party," meaning the deceased; that it should be held by them subject to his control and disposition, and that they would convey to whomsoever he directed "and pay the proceeds thereof to first party." The contract shows that the deceased was a married man at the time of the execution of the instrument, and that his wife was then *non compos mentis*.

The presumption is that the property was community property. To state a cause of action, it was incumbent upon the appellants to allege that the property involved was the separate property of the deceased. *In re Deschamps' Estate*, 77 Wash. 514, 137 Pac. 1009. Our statute, Rem. & Bal. Code, § 5915 (P. C. 95 § 25), provides that property and pecuniary rights owned by the husband before marriage and that acquired by him afterwards by gift, bequest, devise, or descent, with the rents, issues and profits thereof, shall be his separate property, and that he may manage, lease, sell, convey, encumber, or devise by will such property without the cooperation of his wife. Section 5916 (P. C. 95 § 9) provides that property owned or acquired by the wife in the same way shall be her separate property, and that she shall have a like independent power of disposition of it. Section 5917 (P. C. 95 § 27) provides:

"Property, not acquired or owned as prescribed in the next two preceding sections, acquired after marriage by either husband or wife, or both, is community property. The husband shall have the management and control of com-

munity personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof."

Section 5919 (P. C. 95 § 41) provides that a husband and wife may enter into a joint agreement concerning the status or disposition of any portion of the community property then owned or thereafter acquired by them, "to take effect upon the death of either." Section 1342 (P. C. 409 § 639) provides that, upon the death of either husband or wife, one-half of the community property shall go to the survivor subject to the community debts, and the other half shall be subject to testamentary disposition of the deceased.

The transfers were purely voluntary. The appellants took nothing but the naked legal title. The real ownership and the *jus disponendi* remained in the deceased. It is declared that the property belongs to him, to be held for him during his life and to be transferred as and when he should direct; the proceeds of the property, if he willed that it should be sold, to be his. The appellants frankly say in their brief that "the agreement was made so that his wife's relatives would not share in his property and he would yet have dominion over it during his life." This is apparent. In his will he devised and bequeathed all of his property, real and personal, to the children of a deceased brother and sister. The deceased sought by this instrument to accomplish what the law says he cannot do by a testamentary disposition. He cannot thus circumvent the statute. Under the law of this state, the trust terminated upon the death of Alexander Stewart. Under the trust agreement, he was the equitable owner of the property at the time of his death. Upon his death, it became subject to the law of descent of this state. In *Cornwell v. Wulff*, 148 Mo. 542, 50 S. W. 439, the court, in speaking of equitable estates, said:

"It is elemental that equitable estates are governed by the same rule of descents that governs the devolution of legal estates and if this were not so great confusion would result.

(1 Perry on Trusts, § 357; *Cuching v. Blake,* 30 N. J. Eq. 689.) When therefore it is determined that Mrs. Cornwell by the terms of the deed itself took an equitable estate in fee simple in these lands it follows that upon her death it descended to her heirs, the plaintiffs in this case, subject to the curtesy of her husband."

This view accords with the letter and spirit of our community property laws and with our laws of descent. While, under the provisions of Rem. & Bal. Code, § 5917 (P. C. 95 § 27), the husband is given the management and control of community personal property, he is forbidden to devise by will more than one-half thereof. He sought by the instrument under review to hold the equitable title to the property during his lifetime with full power of disposition, and to dispose of the fee and subject it to another trust after his death, in violation of the spirit of our law. Ballinger, Community Property, § 78.

The appellants rely on the case of *Lines v. Lines,* 142 Pa. St. 149, 21 Atl. 809, 24 Am. St. 487. This case proceeds upon the theory that, in the state of Pennsylvania, the wife has no interest in the personal property of the community. It is said "he [the husband] may even beggar himself and his family if he chooses to commit such an act of folly." Our law is more just and humane. McKay, Community Property, § 314. As argued by the respondents, the purpose of § 5917 is to give the management and control of the community personal property to the husband for the purpose of facilitating the business of the community. He can neither beggar his family nor use the community personal property to gratify a caprice to thwart the law, or for his own personal aggrandizement.

The judgment is affirmed.

CROW, C. J., ELLIS, MAIN, and CHADWICK, JJ., concur.