[No. 11873. Department One. April 20, 1915.]

*In the Matter of the Guardianship of the Person and Estate of* MARIA C. STEWART, *a Person of Unsound Mind.*

D. J. HEFFERNAN, *Guardian of the Person and Estate thereof in Florida, et al., Appellants,* v. R. E. BUTLER, *Guardian of the Person and Estate thereof in Walla Walla County, Washington, Respondent.*[1]

INSANE PERSONS—APPOINTMENT OF ANCILLARY GUARDIAN—ACTION TO VACATE—EVIDENCE. In an action by a guardian for a person of unsound mind, appointed in the state of Florida, to vacate an appointment of a guardian for the same ward in the state of Washington, evidence showing the neglected condition of the ward in Florida was material as tending to show the good or bad faith of the Florida relatives, who had agreed to support and care for her in consideration of lands conveyed to them by her deceased husband, and as tending to advise the court of her condition so that her rights to protection might be made known.

INSANE PERSONS—RESIDENCE OF INSANE PERSON—GUARDIANSHIP. A finding is warranted that an incompetent, for whom guardians had been appointed, both in the state of Florida and in the state of Washington, was a resident of this state where there is nothing to

[1]Reported in 147 Pac. 1153.

show that she and her husband had ever acquired a legal residence in Florida, other than the investment of money there and several visits to that state, on one of which the husband died, while on the other hand they had valuable interests in this state, and it is conceded that, at all times prior to the last visit to Florida, they had been citizens and residents of the state of Washington.

INSANE PERSONS—PROPRIETY OF APPOINTMENT OF GUARDIAN—PROPERTY OF WARD—CHOSE IN ACTION. A right of action by a person of unsound mind, to set aside a conveyance executed by her while laboring under the disability of mental incapacity, constitutes property in the county wherein the realty is located, and warrants the appointment of a guardian therein for the enforcement of her interests.

INSANE PERSONS—PROTECTION OF INCOMPETENT—DOMICILE—POWER OF COURT. The appointment of a guardian for the estate of a person mentally incompetent, is within the power of the superior court of the county wherein such incompetent has property, whether such incompetent be a resident or a nonresident of the state; under Const., art. 4, § 6, conferring general jurisdiction upon the superior courts of the state, and giving jurisdiction "in all special cases and proceedings as are not otherwise provided for," and under Rem. & Bal. Code, § 1654, providing that the several superior courts in their respective counties shall have power to appoint guardians for insane persons and incompetents, and of their estates, real and personal, and Id., §§ 1622-1625, providing the procedure for the appointment of guardians of incompetents wherein appointment for nonresident insane persons is recognized.

Appeal from a judgment of the superior court for Walla Walla county, Miller, J., entered November 11, 1913, upon findings in favor of the defendant, dismissing an application to vacate the appointment of a guardian for an insane person, tried to the court. Affirmed.

*F. L. Stotler*, for appellants.

*T. P. & C. C. Gose*, for respondent.

CROW, J.—This proceeding was instituted in the superior court of Walla Walla county by D. J. Heffernan, a foreign guardian of the person and estate of Maria C. Stewart, appointed in the state of Florida, against R. E. Butler, guardian of the person and estate of Maria C. Stewart, appointed by the superior court of Walla Walla county, Wash-

ington, to require R. E. Butler to show cause why he should not be discharged as guardian and why the order appointing him should not be vacated. Afterwards Charles B. Stewart, claiming to be a party in interest, was joined as a petitioner. From an order dismissing the application the petitioners D. J. Heffernan and Charles B. Stewart have appealed.

Appellants, citing and commenting on Rem. & Bal. Code, §§ 1622 to 1625, and §§ 1654 to 1661 (P. C. 409 §§ 683-689, 747-761), contend that the superior court of Walla Walla county was without jurisdiction to appoint R. E. Butler as guardian of Maria C. Stewart, and that such appointment is void, for the reasons, (1) that Maria C. Stewart is not a resident of Walla Walla county, Washington, and (2) that she has no property or estate within Walla Walla county. Appellants further claim that Maria C. Stewart is a resident of Florida, and that appellant D. J. Heffernan, on January 25, 1913, was appointed guardian of her person and estate by the county court of Dade county, in that state.

The following facts are shown by the record: That Alexander Stewart, hereinafter mentioned as Alex Stewart, now deceased, and Maria C. Stewart, were married in the year 1885; that at all times thereafter and until the year 1911, their unquestioned residence was in Walla Walla county, Washington; that they accumulated an estate of the value of about $75,000; that for many years Maria C. Stewart has been insane and mentally incompetent to attend to any business affairs; that between 1910 and 1912, Alex Stewart invested about $50,000 in the state of Florida; that in 1911 he took his wife to Idaho, where they remained with relatives for about one year; that in September, 1912, they went to Florida, where Alex Stewart died in November, 1912; that as nearly as can be ascertained from the record, all his property and investments in the state of Florida had before his death passed into the hands or control of his relatives, a number of whom resided in that state; that in October, 1911,

Alex Stewart, as party of the first part, and Barr P. Stewart, Elizabeth C. Stewart, Charles B. Stewart, Edgar L. Stewart, and Miner F. Stewart, his relatives, as parties of the second part, entered into a written agreement which recited that "Alex Stewart of Waitsburg, Washington," had theretofore caused to be conveyed and transferred to the parties of the second part certain real and personal property situate in Florida, Washington, and other states, and in substance provided that the purpose of the contract was to secure to Alex Stewart and to his invalid and demented wife, and to each of them, maintenance and support so long as they should live. A copy of this contract may be found in our opinion in *Stewart v. Bank of Endicott*, 82 Wash. 106, 143 Pac. 458, and need not be repeated here.

After the death of Alex Stewart, Barr P. Stewart, his nephew, was appointed administrator of his estate in Florida, although it does not appear that Alex Stewart had title to or control of any property in that state at the time of his death. Maria C. Stewart remained in Florida with the relatives of her deceased husband until she was removed to Washington under the circumstances hereinafter stated. On January 25, 1913, an order was made by the county court of Dade county, Florida, appointing D. J. Heffernan guardian of the estate of Maria C. Stewart, which order in part reads as follows:

"It is ordered, adjudged and decreed, that said D. J. Heffernan be and he is hereby appointed guardian of the estate of said insane person, and that upon taking the prescribed oath, and entering into a bond to be approved by this court, in the sum of five hundred and no-100 dollars, letters of guardianship as aforesaid be granted to said applicant."

It will be noted from this order that letters of guardianship were not to be issued until the bond was executed and filed. Heffernan did not file any bond until July 30, 1913, at which time Maria C. Stewart had been removed to the state of Washington, and R. E. Butler had been appointed

7—85 WASH.

as her guardian in Walla Walla county, Washington, and had commenced the action hereinafter mentioned against Charles B. Stewart and others to set aside certain deeds, for her separate property, alleged to have been fraudulently obtained. Maria C. Stewart had no kindred in the state of Florida, but was under the control of relatives of her deceased husband. She had kindred in this state, one of whom, W. G. Preston, her brother, resided in Waitsburg, Washington. In February, 1913, W. G. Preston employed M. O. Pickett, an attorney at law, to go to the state of Florida, accompanied by Mrs. Pickett, for the purpose of securing the return of Maria C. Stewart to this state. The evidence of Mr. and Mrs. Pickett, which is undisputed, shows that when they arrived in Florida they found Maria C. Stewart in a neglected, pitiable, and filthy condition; that she was in feeble health and unable to care for herself, and that she was almost entirely without clothing and in the most abject want. Although the record shows that her husband's relatives had agreed to maintain her in comfort, and although it appears that she had community interests in property in this state of the value of $26,000, that she had separate property in Whitman county in this state of the value of $8,000, and that she claimed real estate in the city of Waitsburg, in Walla Walla county, which had been deeded by her when she was in a state of total mental incapacity, the evidence further shows that, notwithstanding these property rights, and notwithstanding the $50,000 which her husband had taken to Florida, she was kept in this forsaken, pitiable, and abject condition by relatives of her husband who, through the appellant D. J. Heffernan, now seek to have her returned to Florida for the manifest purpose of thwarting legal proceedings instituted in this state to secure her the property rights and that comfortable maintenance to which she is entitled.

Appellants contend that the evidence of Mr. and Mrs. Pickett showing her neglected condition in Florida was incompetent and should have been excluded, but it was material

as tending to show the good or bad faith of the appellants here involved, and as also tending to advise the court of her condition so that her rights to protection might be made known. The record further shows that, before Mr. Pickett could obtain permission to return Mrs. Stewart to the state of Washington, he, as representative of her brother W. G. Preston, was required to execute the following written contract, which was duly acknowledged by all parties thereto on February 21, 1913:

"Whereas, It appears from the records of the county judge's court, in and for Dade county, Florida, that one Maria C. Stewart has lately been duly and legally declared insane and of unsound mind, and as said proceedings were had pursuant to the statutes of the state of Florida; and

"Whereas, It further appearing that after the findings of the committee and the court in the premises, the custody of the person of the said Maria C. Stewart was duly and legally adjudged into the care, custody and control of Barr P. Stewart, as administrator of the estate of Alex. Stewart, deceased; and

"Whereas, On a later date, upon a petition duly filed and having been duly considered by the court, it was ordered and adjudged that D. J. Heffernan, a responsible person, and a resident of the city of Miami, in the county of Dade, and state of Florida, was duly appointed guardian of the said Maria C. Stewart, and now has the said care, custody and guardianship of the said Maria C. Stewart; and

"Whereas, It is deemed for the best health and interest of the said Maria C. Stewart to have a change of climate, and it being the desire of her brother, William G. Preston, of the city of Waitsburg, and state of Washington, to have her pay him a visit, and having consulted with medical authorities relative to the benefit to be accrued to the said Maria C. Stewart by making the said visit; and

"Whereas, The said William G. Preston has voluntarily offered and agreed to the said guardian and administrator for the care, preservation, expense and safekeeping of the person of the said Maria C. Stewart during her said visit to the said William G. Preston, who is a natural brother of the said Maria C. Stewart, and there being no objection to

the said Maria C. Stewart paying a visit to her brother as aforesaid;

"It is therefore agreed by and between the said guardian and administrator, as well as the legally authorized agent, M. O. Pickett, who is acting for and legally authorized by the said William G. Preston to take the said Maria C. Stewart on a visit to her said brother, the said William G. Preston, the said M. O. Pickett agreeing by, for and in behalf of the said William G. Preston, who is reputed to be a man of means and able to carry his agreements into effect to take good care and furnish proper medical attention, sustenance and all required necessities to the said Maria C. Stewart during her said visit to her said brother, the said brother, to wit, the said William G. Preston.

"It is further agreed and understood that as the said Maria C. Stewart is an invalid and of unsound mind, that her visit to her said brother, William G. Preston, shall in no way or manner be a charge upon the estate of Alex. Stewart, deceased, and no part of the expense thereon shall be borne by Barr P. Stewart, as administrator of said estate, or individually.

"Inasmuch as the said Barr P. Stewart and other of his relatives have contracted to and with Alex. Stewart during his lifetime to support the said Maria C. Stewart as long as she should live, it is hereby specifically contracted and agreed that the said William G. Preston is to absolve the said Barr P. Stewart and the other of his relatives named in the said contract from any expense or charge under said contract on account of said visit, it being the intention of the parties hereto that the conditions in relation to said contract between Barr P. Stewart and Alex. Stewart, now deceased, shall remain in *statu quo* and be in no manner altered or changed on account of the visit of Maria C. Stewart, as hereinbefore specified, except that none of the expense of said trip, or Mrs. Stewart's maintenance while away from Miami, Florida, shall be paid by Barr P. Stewart, or his relatives. The said William G. Preston, by his attorney, M. O. Pickett, and the said attorney as a personal obligation, hereby agree to report to Barr P. Stewart, administrator, and D. J. Heffernan, guardian, every three months, and oftener if requested, in relation to the physical condition of the said Maria C. Stewart.

"It is further agreed that the said Maria C. Stewart shall have kind and considerate care and attention, and if such should not be the case, or if the said Maria C. Stewart should be in any manner mistreated at any time, her visit shall immediately, without notice, terminate, and the said William G. Preston hereby agrees to offer no objection whatsoever to the redelivery of the said Maria C. Stewart to the said Barr P. Stewart.

"In witness whereof, and to all of the foregoing, we, all the parties hereto, do hereby assent and sign our names.

    "William G. Preston, By M. O. Pickett, His Atty.

           "Barr P. Stewart, Administrator.

           "D. J. Heffernan, Guardian.

In the presence of us:

    "James T. Sanders.

    "Agnes Zetrouer."

After this contract was executed, Mr. and Mrs. Pickett purchased suitable clothing for Mrs. Stewart and, by easy stages and with the assistance of nurses and hospital attendants secured at various points along the road of travel, brought Mrs. Stewart to Walla Walla county, in this state, where her health and physical condition have rapidly improved, although her mind seems to be utterly gone. After her return to this state, upon the application of certain of her friends, the respondent, on March 29, 1913, was duly appointed as her guardian by the superior court of Walla Walla county, and thereafter qualified as such. Mrs. Stewart was duly served with process, and was present in court at the time of the hearing which resulted in respondent's appointment. The record shows that, for many years prior to 1906, Maria C. Stewart owned and held title to certain lots in Waitsburg, Walla Walla county, Washington, as her separate estate; that on April 21, 1906, she conveyed these lots to her husband, Alex Stewart, so as to make them his separate estate; that thereafter, on September 18, 1912, shortly before his death, he conveyed them to the appellant Charles B. Stewart, his half brother; that respondent, R. E. Butler, as

guardian for Mrs. Stewart, claiming that she was insane, that the deed from her was fraudulently obtained, that Alex Stewart conveyed the lots to Charles B. Stewart without consideration, and that Charles B. Stewart then knew she was insane and incompetent when she had conveyed the lots to her husband, commenced an action in the superior court of Walla Walla county against Charles B. Stewart, his wife, and others, to set aside the deeds and quiet her title. It was after the commencement of this action that the appellant D. J. Heffernan filed his bond in the county court of Dade county, Florida, as guardian of Maria C. Stewart, and instituted this proceeding to vacate the appointment of R. E. Butler.

The mere statement of these facts is sufficient to compel an affirmance of the order of the trial court refusing to vacate R. E. Butler's appointment as guardian. The record does not convince us that Alex Stewart or his demented wife ever obtained a legal residence in the state of Florida, or that he intended to remain there. He made his last trip in September, 1912, and died in the following November. It is conceded that, at all times prior to 1911, he and his wife had been citizens and residents of the state of Washington. They had valuable property interests in this state at the time of his death, and there is no convincing evidence that they ever became citizens of any other state. This being true, the trial judge was warranted in finding, as he did, that Maria C. Stewart is a resident of the state of Washington.

There is no merit in appellants' contention that Maria C. Stewart had no property in Walla Walla county. She claimed to be the owner of the lots in Waitsburg in that county, above mentioned, and, although it does not appear from this record, we might state that, in the action brought by her guardian, she obtained a decree quieting her title thereto, which decree we have this day affirmed in cause No. 11872, *Stewart v. Stewart, post* p. 202, 147 Pac. 1157. She held, or claimed to hold, the equitable title to these lots, and

her claim was a property right which she, being a person of unsound mind, could only enforce in an action prosecuted by her guardian. It would be entirely too technical to hold that this cause of action was not properly in Walla Walla county.

Without regard to suggestions already made, and conceding that Maria C. Stewart is a nonresident of this state, without so deciding, it is apparent that the construction of our guardianship statute and the doctrine announced in *In re Sall*, 59 Wash. 539, 110 Pac. 32, 626, 140 Am. St. 885, is controlling here. We there said:

"But, construing the act as a whole, and recognizing the necessity as well as the duty of the state to protect the estates of incompetent persons, the construction put upon the statute by appellant may well be doubted. A careful examination of the law on our own account convinces us that the superior courts have an inherent jurisdiction to protect estates of nonresident, incompetent persons; and that, while it is generally said that the power to appoint guardians is purely statutory, the power in fact lies in the sovereignty of the state and the procedure only is statutory. In England, from whence we have derived our common law and the accepted heads of equity jurisdiction, the king assumed the care of insane persons and their property *in parens patriae*. After a declaration or finding of insanity, the jurisdiction in lunacy cases was held in some early cases to be no longer exercisable under the king's sign manual, but in virtue of the general powers of the court. *Ex parte Grimstone*, 2 Amb. 706; *Burford v. Lenthall*, 2 Atk. 551; *In re Fitzgerald*, 1 Ll. & G. t. P. 20, 2 Sch. & Lef. 439. Mr. Woerner, in his work on the American Law of Guardianship, § 18, says that it is the prevalent conviction of lawyers, judges, and text-writers in America that, in the absence of countervailing statutes, American courts having equity powers possess a general jurisdiction for the appointment of guardians. Story draws no distinction between the powers of American and English courts in this respect; Story's Eq. Jur., ch. 35; and Mr. Pomeroy, in his Equity Jurisprudence, at § 1306, says that American courts have this power in so far as it has not been taken away by statute. It is, therefore, held that, where the power to appoint guardians has been con-

ferred upon other courts, as, for instance, the probate court
of the territory before the creation of the state of Washing-
ton, the power is cumulative and concurrent with the court
of chancery. [Citing authorities.] It would follow, then,
that the statute, in declaring that the court might appoint
a guardian for the property of an incompetent person resi-
dent of the county, would not bar a court of general juris-
diction of its general equity powers, provided the constitu-
tion is broad enough to warrant its exercise. That the su-
perior court of this state has such general jurisdiction has
been frequently declared."

Later in our opinion we referred to the provisions of § 6
of art. 4 of the constitution of this state, relative to the juris-
diction of our superior courts, and, after quoting excerpts
from *Moore v. Perrott*, 2 Wash. 1, 25 Pac. 906; *Krieschel v.
Board of Comr's, Snohomish County*, 12 Wash. 428, 41 Pac.
186; *Filley v. Murphy*, 30 Wash. 1, 70 Pac. 107; *Reformed
Presbyterian Church v. McMillan*, 31 Wash. 643, 72 Pac.
502, and *Dodge v. Cole*, 97 Ill. 338, 37 Am. Rep. 111, we
further said:

"While there are cases holding that this special jurisdic-
tion over the estates of incompetent persons does not come
to us as inherent to the equitable jurisdiction of our courts,
reference to our constitution, art. 4, § 6, as construed by the
cases heretofore decided by this court, will show that juris-
diction is given 'in all special cases and proceedings as are
not otherwise provided for.' This must include power over
the estate of an incompetent when properly brought before
the court, for the object of the people in establishing their
courts and defining their jurisdictions was to safeguard and
protect property rights."

Surely, if the superior courts of this state have jurisdic-
tion to appoint a nonresident of this state as guardian of an
incompetent who had disappeared and was not known to be
within the state, to protect his Washington property rights,
as held in the *Sall* case, the superior court of Walla Walla
county had jurisdiction to appoint the respondent, R. E.
Butler, as guardian of Maria C. Stewart, it appearing that

she was at the time within the jurisdiction of the court and actually present in court. If the courts of this state cannot afford relief to this unfortunate incompetent, through a guardianship proceeding, they would be without power to do justice or afford equity in any action.

Appellants seem to predicate some rights upon the contract which Mr. Pickett executed when in Florida, insist that he and Mr. Preston have violated the agreements therein contained, and claim that, by virtue of the contract and its violation, they are entitled to have Mrs. Stewart returned to Florida in order that the appellant D. J. Heffernan may discharge his pretended duties as guardian in that state. This contention is scarcely worthy of passing notice. The entire record is convincing to the effect that what the Florida parties sought to accomplish by their written contract was to rid themselves of the expense of caring for Mrs. Stewart, although they had seized all of the Florida property of her late husband and had contracted with him to care for and maintain her in comfortable circumstances. It was not until they feared they were about to lose property interests which they hoped to control in this state that they concluded their contract had been violated by Mr. Preston and Mr. Pickett, and that they in some manner caused the Florida guardian to institute this proceeding. It was then that they concluded the courts of this state had no jurisdiction to appoint a guardian for Mrs. Stewart or protect her interests, and insisted that she should be returned to the state of Florida. Such contentions, under the facts here shown, do not commend themselves to a court of justice.

The judgment is affirmed.

CHADWICK, PARKER, MAIN, and ELLIS, JJ., concur.