### In re WALLACE.

District Court, E. D. Washington, S. D.
October 27, 1927.

No. 1324.

Bankruptcy ☞143(6)—Creditor of bankrupt, petitioning individually, had no right to have community personal property listed as assets (Bankruptcy Act, § 70a, subd. 5 [11 USCA § 110]; Rem. Comp. Stat. Wash. § 6892).

Creditor of bankrupt, voluntarily petitioning individually as to his own separate property and debts, and not as to community property and debts of himself and wife, has no right under Bankruptcy Act, § 70a, subd. 5 (11 USCA § 110), to have community personal property of bankrupt and wife listed as assets by virtue of Rem. Comp. Stat. Wash. § 6892, authorizing husband to manage and control community personal property, since under such law separate creditors of bankrupt could not subject to payment of their debts community personal property owned by bankrupt and wife.

In Bankruptcy. In the matter of the bankruptcy of Frank A. Wallace, individually as to his own separate property and debts, and not as to the community property and debts of himself and wife, wherein Frank Watson, a creditor, objected, and insisted that the community property be listed as an asset. Order in accordance with opinion.

Earl W. Benson, of Walla Walla, Wash., for bankrupt.

Herbert C. Bryson, of Walla Walla, Wash., for objecting creditor.

WEBSTER, District Judge. A petition in voluntary bankruptcy was filed by Frank A. Wallace, "individually as to his own separate property and debts, and not as to the community property and debts of himself and Myrtle Wallace, his wife." In due course the referee made an adjudication that "Frank A. Wallace, individually as to his own separate property and debts, and not as to community property and debts of himself and Myrtle Wallace, his wife, is hereby adjudged bankrupt." All the indebtedness listed by the bankrupt in his schedules are separate debts of the bankrupt, incurred prior to his marriage. The community, composed of Frank A. Wallace and Myrtle Wallace, at the time of filing the petition in bankruptcy was the owner of considerable community personal property, consisting principally of cash acquired since the marriage. None of the community personalty is listed by the bankrupt as assets of his estate. Frank Watson, a creditor of the bankrupt, insists that the community personalty must be listed, and that such property, upon the filing of the voluntary petition, vested in the trustee for the benefit of the separate creditors of the petitioner. This contention is rested on section 70a, subd. 5, of the Bankruptcy Act (11 USCA § 110), which provides:

"The trustee of the estate of a bankrupt, upon his appointment and qualification, * * * shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

It is argued that since, under section 6892, Rem. Comp. Stat., it is provided "the hus-

band shall have the management and control of community personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof," the community personal property of the petitioner and his wife could by some means have been transferred by the petitioner, and therefore such property upon the filing of the petition passed to and became vested in the trustee in bankruptcy for the benefit of the separate creditors of the bankrupt. This contention, while at first blush plausible, will not bear close scrutiny and analysis. Section 70 of the Bankruptcy Act, supra, by its terms deals with property the title to which is held by the bankrupt, and it is such property to which the provisions of subdivision 5 of that section apply; that is to say, it must be property the title to which is vested in the bankrupt at the time of the adjudication, and which he could by any means have transferred, or which might have been levied upon and sold under judicial process against him.

It is true subdivision 5 deals with two classes of property, namely, that which by some means may be transferred by the bankrupt, and that which may be levied upon and sold under judicial process against him; but both classes of property must be property the title to which is vested in the bankrupt. The purpose of subdivision 5 was to cover all classes of property owned by the bankrupt at the time of the adjudication, and to compel its surrender for the benefit of his creditors as a condition precedent to discharge. Conceiving that there might be some classes of property owned by a bankrupt which would have substantial pecuniary value, and yet, because of its peculiar, perhaps its intangible, character, it could not be levied upon and sold under judicial process, the provision concerning property which could by any means be transferred was inserted. The obvious intent of the Congress was to make sure that all property owned by the bankrupt and which he was capable of transferring, whether subject to levy by judicial process or not, must be surrendered. It was not intended to go beyond this, and give his creditors the benefit of property which they could not possibly have subjected to the payment of their debts, if no bankruptcy proceeding had been instituted.

It is conceded by counsel, as it must be, that in the absence of bankruptcy the separate creditors of the bankrupt could not in this state have subjected to the payment of their debts the community personal property owned by the bankrupt and his wife. The title to community personalty under the laws of the state of Washington is not vested in the husband, but in the community composed of the husband and wife. The provision of the statute with respect to the management and control of such property does not alter or disturb that community title. As said by the Supreme Court of Washington in the case of Schramm v. Steele, 97 Wash. 309, 315, 166 P. 634, 636:

"The same circumstances, all of them and no others, which *make* real estate community property make personalty community property. The two kinds of property are impressed with the community character by the same facts and by force of the same words in the same defining statute. All property, whether real or personal, 'property and pecuniary rights' without exception, 'acquired after marriage by either husband or wife, or both' otherwise than 'by gift, bequest, devise or descent,' is community property. Rem. Code, § 5917, by reference to sections 5915 and 5916. It follows that the one kind of property, when so held and acquired, is just as absolutely the property of the community as such as is the other, and that neither member of the community has any independent *proprietary* interest or right in either. It follows further that the management and control conferred by statute (Id. §§ 5917 and 5918) on the husband as to both species of property, though differing in its extent as to the two kinds, is a management and control *for the community and in the community interest*. This necessarily results from the fact that it is the statutory entity—the community as such— which owns the property. The provision of the statute intrusting the husband with 'the management and control of community personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof' (Rem. Code, § 5917), must be construed in the light of this dominant fact of ownership. The property referred to is 'community' property; that is, property belonging to the community. The husband is made, by the statute, the manager, not the owner. His management and control include the power of absolute disposition, but only for the community. Else there is no such thing as a vested property right in the community as to any personal property, since the husband could give away all such property in any manner he pleased, except by will, at any time during the existence of the community. To hold that

the whole substance of the term community property as applied to personalty consists in a mere contingent expectancy of the wife, would make of the term 'community personal property' a palpable misnomer. It would take away every community element except the fact that the wife's labors and sacrifices had helped to earn it. It would destroy that equality which it is the obvious purpose of our community property law to conserve. These considerations make it plain that the statute, in conferring upon the husband the management and control of the community property, though giving him the absolute power of disposition of community personalty, intends no more than to make him the statutory agent of the community."

It will thus be seen that under the Washington statutes the title to community personal property is vested in the community as such and that neither spouse has any independent proprietary right or interest therein. The husband's rights are those of a manager, not an owner, and such right of management is exercised by the husband in the capacity of a statutory agent for the community, and his acts must be for the community and in the interest of the community. That the husband has no absolute proprietary right in community personal property, to the complete extinguishment of the wife's rights therein, is made plain by the case of Marston v. Rue, 92 Wash. 129, 159 P. 111, wherein it is said:

"Now a wife's rights in family personalty are not of the contingent sort, like dower or survivorship, but a present estate. True, by our statute the husband is made manager with full power to sell and dispose of this. But it does not follow that he can give it away. He is, so to speak, only the head of the firm. The personal property is just as much hers as his. The very statute that gives him sale power over the whole restricts his testamentary power to a half. Under our law she has helped to create it as much as he."

In this case the court says that the sweeping powers of management conferred by the statute are for the purpose of facilitating the business of the community, and refers with approval to the earlier case of Stewart v. Bank of Endicott, 82 Wash. 112, 143 P. 458.

Let it be borne in mind that we are not dealing with a case where the husband by voluntary bankruptcy proceedings is surrendering community property for the satisfaction and discharge of community debts. In such a situation altogether different considerations are involved. Since community property not exempt is liable for community debts, the manner in which it is applied to the satisfaction of such obligations involves only the right of management. The performance of this act of management does not involve the exercise of power in the husband to wipe out and destroy the wife's rights in the community personalty by subjecting it to the payment of debts which the wife is neither legally nor morally obligated to pay. If the objecting creditor here is correct in his contention, it follows necessarily that by filing the petition in bankruptcy the husband thereby and at that moment passed to the trustee, thereafter to be appointed, the legal title, not to a moiety of the community personal property, but to all of it, and by that act subjected the whole of it to the satisfaction of the petitioner's separate debts, to the utter annihilation of the wife's rights in the property, and to the complete extinguishment of the rights of community creditors, if any such there be.

In his petition Wallace was careful not voluntarily to subject the community property to the payment of his separate obligations, for he petitioned "individually as to his own separate property and debts, and not as to the community property and debts of himself and Myrtle Wallace, his wife," and the adjudication was made accordingly. In the Schramm Case, supra, this language is found:

"The assertion found in the Powell decision that the husband may sell the community personalty 'to satisfy his individual debt and pass a good title,' even if sound, is only so because the voluntary act of sale is within the scope of the husband's apparent authority as agent. The argument is conclusively answered by the dissenting opinion of Judge Gordon. He points out that the husband's power of disposition, whatever its extent, 'is to be voluntarily exercised.' The authority 'presupposes the exercise of discretion and assent, and hence such a sale or disposition of the property is to be distinguished from an involuntary execution sale, wherein the consent of the debtor is wholly immaterial.' "

Clearly under the petition in this case the bankrupt has not, in the exercise of his discretion, voluntarily assented to the subjection of the community personalty to the payment of his separate debts. He expressly does the precise contrary. Moreover, even though the petitioner had actually intended to subject the community personal property to the satisfaction of his separate debts, how

could such an attempt be said to be an act of agency performed in the interest of the community? Such an attempt on his part would have been a palpable fraud upon the rights of the wife, and would not be countenanced or tolerated. "It is one of the fundamental postulates of the community property system that the husband must not convey or transfer the community assets with intent to defraud the wife; *that is, with intent to deprive her of any part of her share.*" McKay, Community Property (2d Ed.) § 721.

It is suggested that Wallace had no right to petition solely as to his separate debts and property. However, I do not deem it necessary to pass upon that question at this time. If it be conceded that he has no such power, clearly he did not, by attempting its exercise, subject the community personalty to his separate debts. The creditor's entire contention is predicated upon the claim that by the bankrupt's separate petition he, as a matter of law, ipso facto passed to the trustee in bankruptcy the title to the community personalty. Plainly, if the law does not contemplate the filing of any such proceeding, no legal consequences would flow from any such attempted course.

I conclude that the holding of the referee that the objecting creditor has no right to have the community personal property of Wallace and his wife listed as assets of the bankrupt's estate is correct, and should be confirmed. Order accordingly may be submitted on notice to adverse counsel, or without such notice, if the order is approved as to form.