[No. 13409.  Department Two.  July 10, 1916.]

## M. H. MARSTON, *Appellant*, v. OLAF RUE *et al.*, *Respondents.*[1]

EVIDENCE—PRESUMPTIONS—LAWS OF OTHER STATE. In the absence of proof, the marital property laws of Alaska are presumed to be the same as our own.

HUSBAND AND WIFE—COMMUNITY PROPERTY — ACQUISITION — PRESUMPTIONS. An automobile purchased by a husband from his "mining operations," one year following a division of community property with his wife, is presumptively community property, the burden being upon him to establish that it was purchased with the property previously set aside to him.

SAME—COMMUNITY PROPERTY—RIGHTS OF HUSBAND AND WIFE— GIFT—SALE BY WIFE. The power of the husband to sell and dispose of the community personal property does not authorize him to give it away; hence an automobile given by him to a paramour, and abandoned by the husband who had left the state, may be retaken by the wife and sold by her as "perishable property."

SAME—SALE BY WIFE—ESSENTIALS—BILL OF SALE. A sale by a wife of perishable property abandoned by the husband is good by mere delivery, and it is immaterial that the bill of sale was not made in the husband's name.

SAME. In such a case, the rights of the vendee are not affected by the fact that the wife intended to sell only her half interest.

Appeal from a judgment of the superior court for King county, Frater, J., entered December 7, 1915, upon findings in favor of the defendants, in an action of replevin, tried to the court. Affirmed.

*Lyons & Orton,* for appellant.

*Walter S. Fulton,* for respondents.

[1]Reported in 159 Pac. 111.

BAUSMAN, J.—The Marstons, married in Alaska, had accumulated there up to 1912 sundry mining properties, which in that year they divided by deed to the wife of a half interest and her acknowledgment that it constituted the husband's full settlement of her rights in those claims. Under just what relation the mines had been acquired is not clear. The wife's acquittance recites the one-half interest as hitherto held "in trust" for her, and the meager testimony points to a business partnership in mining property, acquired as she testified "by joint efforts."

Be this as it may, the division by its express terms goes no further than to sever those particular assets. Assuming it sufficient for a severance under Rem. & Bal. Code, § 8766, it was partial only. It settled no other. present or any future property rights. "He gave it to me not because we were separating but so I would be protected and he would not throw away everything on that woman. That never released Mr. Marston as far as my support or taking care of me was concerned in any way, shape, or form." These comments on the documents are not controverted nor does the record show arrangement for divorce.

After this the pair next appear in Seattle, where they lived apart, and the infatuation of the husband for the other woman becoming shameless, he bought and gave her the use of an automobile costing $2,200. After this he returned to Alaska. The paramour flaunting herself intolerably in the motor car for three or four months after his departure, the wife took it from the garage and sold it to defendant, not out of necessity for money but from an assertion of right. The present suit is the husband's replevin against the purchaser.

The marital property laws of Alaska not being in proof, we conclusively assume them to be the same as our own. *Sheppard v. Coeur d'Alene Lumber Co.*, 62 Wash. 12, 112 Pac. 932, Ann. Cas. 1912 C. 909, 44 L. R. A. (N. S.) 267;

*Gunderson v. Gunderson,* 25 Wash. 459, 65 Pac. 791; *Clark v. Eltinge,* 29 Wash. 215, 69 Pac. 736.

The automobile, acquired after marriage, was then presumptively community personalty. To be sure, the husband had a right to prove this machine his own out of the previous property set aside to him, but his own testimony, which is all there is on this subject, is most unsatisfactory. He bought it, he says, from the proceeds of "my mining operations in Alaska." This is uncertain or evasive for he had not bought it until the year following the settlement. Whether in that time he had or had not acquired new property or received new earnings from speculations, he does not show, or whether this could not have been from former property still undivided. Now the burden of proof, so long as there was no divorce, was clearly on him.

The lower court found the automobile to be a family asset, and we shall not reverse that finding. Now a wife's rights in family personalty are not of the contingent sort, like dower or survivorship, but a present estate. True, by our statute the husband is made manager with full power to sell and dispose of this. But it does not follow that he can give it away. He is, so to speak, only the head of a firm. The personal property is just as much hers as his. The very statute that gives him sale power over the whole restricts his testamentary power to a half. Under our law she has helped to create it as much as he. Consequently the idea is not to be tolerated that a husband can give a mistress stocks and bonds or precious stones out of the family money. No part of those savings can he make gifts of against her consent, even to his own relatives, though mere trifles to the latter no doubt might be sustained under the rule of *de minimis.* The law cannot countenance his right to a wilful, premeditated waste of family personal property, which is now so often the bulk of an estate. The burden of proof, to be sure, must be on the wife when she seeks to interfere. The presumptions are all against her. She cannot act upon

whim or take things into her own hands every time he goes out of town or snatch back an asset where there can be two minds on the question. But that in a plain case she must have redress either by damages or recovery of the thing itself from his fraudulent donees is undeniable, or we should be taking the statute away from her. On this we had occasion to comment in *Stewart v. Bank of Endicott*, 82 Wash. 106, 143 Pac. 458, where we said that, while in a common law jurisdiction a court had been compelled to acknowledge that the husband could beggar the wife by giving away the personal property, he could not do it here. What he was given his sweeping powers for by our statute, we said, is "the facilitating the business of the community."

Between the wife and the mistress, since the latter technically is not claiming the car, the principle need not be further discussed, but as between the wife and the husband a little more may be said. At the garage the car was left by him subject to the order of the other woman and not of the wife. Thus Marston had returned to Alaska leaving valuable joint personalty to be immorally consumed during a period apparently indefinite. The agent of the joint estate had both deserted and violated his trust. He even admits that he had allowed his favorite to assume the name of Mrs. Marston in Seattle; so her authority to complete the wrong use of this motor car is not to be denied.

Under these circumstances the wife clearly had a right to take this automobile away from the garage. But had she a right to sell it? If we class it among perishable things, undoubtedly. And, while not perishable in the ordinary sense, it is with these that an automobile ought to be classed in adjudging the rights or liability of this wife. It requires insurance of various kinds and cannot even be stored without expense. It deteriorates in time from mere loss of style. The wife in a situation like this ought to be allowed to do with it what she would do with her separate property, or at least what a reasonably prudent person would in his own circum-

stances to stop waste and expense. To concede her only possession would not be enough. 'She must have a right to sell or lease or what else will reduce loss. Her property right in it is as great as his. Indeed, it may fairly be said that the only sure protection she could feel that the mistress would not get possession of it again if stored in another garage as family property was in getting it off her own hands entirely by sale. When a husband in fine leaves a wife where she must seize a piece of joint property immorally given by him to her worst enemy, he shall not call her to nice account about the disposition she makes of it when it is expensive to keep and he has gone to a distant region.

Even under the one-sided system of the common law, where the wife had no interest in personalty, she could sell some of it if she were left in distress, and what that law was obliged to extend to a dependent because of her necessity, our own cannot deny to a partner in estate.

That there is in the wife inherent power under our law to act in a serious absence of the husband is plain. In some cases he may be unavoidably detained at great distance for a year or years, unable to communicate with her. He might be an absconder or in distress or unable from many causes to get back, yet leaving perishable estate. Shall a wife have no right to sell stored eggs after many months? Shall she be forced to hold idle in her hands declining stocks? Shall she be unable to sell a cow to get cash for the farm? In these assets, if they are acquired after marriage, she is an equal partner. Some right to act therefore must be given her in extreme cases. How far solely on account of absence she may go need not be decided, because here we have both his absence and his authority to another to commit a waste. As to the consideration, the lower court having found that the sale by the wife was for sufficient value, we do not feel justified in finding otherwise. The consideration was about half of the estimated second-hand value of a motor car driven in a few months fourteen thousand miles and requiring some ex-

penditures.   The question now is not between the husband
and the wife, but between the husband and her vendee, to
whom, if she had a right to sell at all, she had a right to sell
as a husband has, on any terms not fraudulently low.  Neither
is it of moment that the wife in cross-examination concedes
that in selling she may not have intended to convey Mar-
ston's half interest also, for the vendee of family personalty
is not to be affected by mental reservations of the selling
spouse.

It is suggested that a bill of sale she gave was deficient
since it was signed not in Marston's name but her own, but a
sale of personal property is good by mere delivery.  In *Blum
v. Smith,* 66 Wash. 192, 119 Pac. 183, the bill of sale we
spoke of as necessary was contemplated by a bargain for
lodging house effects in a building not owned by the vendors
and where title to some of the articles might be set up by
others.

We do not by this opinion enlarge the rights of a wife so
as to give to such as buy from her any presumption of good
title.   On the contrary, these must buy at their peril from
one who can deliver title only in an unusual situation.   They
can prevail only after justifying the exception beyond reason-
able debate.

Affirmed.

MORRIS, C. J., HOLCOMB, PARKER, and MAIN, JJ., concur.