[No. 34041. *En Banc.* May 2, 1958.]

*In the Matter of the Estate of* GRACE H. LEUTHOLD, *Deceased.* THE STATE OF WASHINGTON, *Appellant,* v. WALTER M. LEUTHOLD *et al., as Executors, Respondents.*[1]

[1]Reported in 324 P. (2d) 1103.

*The Attorney General, Keith Grim* and *Henry W. Wager, Assistants,* for appellant.

*Graves, Kizer, Greenough & Gaiser,* for respondents.

*John N. Sylvester* (of *Lycette, Diamond & Sylvester*), *amicus curiae.*

DONWORTH, J.—Grace H. Leuthold died testate December 22, 1952. Her husband and her son were appointed, and qualified, as executors of her estate. The state attempted to impose an inheritance tax upon one half of the cash surrender value of six life insurance policies upon the life of her surviving spouse. The beneficiaries designated in the several policies at the time of Mrs. Leuthold's death were either the son, daughter, or the surviving spouse's estate. All premiums on the policies which became due prior to her death were paid out of community funds. The state asserted that her death was a taxable event which passed her half of the community interest in the cash surrender value of the policies to her legatees.

The trial court (being bound by our decision in *In re Knight's Estate, infra*) was constrained to hold against the state's right to collect the tax in question, and the state appeals.

Appellant contends the court erred in following the rule laid down in *In re Knight's Estate,* 31 Wn. (2d) 813, 199 P. (2d) 89 (1948), which it asks us to overrule. In that case, we said:

"The policies which are involved in this case were all payable upon the death of an insured who was the surviving spouse, and nothing whatever became payable on the death of the beneficiary, the deceased wife. In other words, even

if the cash surrender value of a life insurance policy be considered to be property, still it is not property which passes *by will or by the statute of inheritance.* Whatever may be realized by anyone on the cash surrender value of such policies is acquired solely by virtue of the *contract* between the insurer and the insured. . . .

"The cash surrender value of the policies here involved is neither property which passed by will or by the statute of inheritance, under Rem. Supp. 1945, § 11201, nor 'insurance payable upon the death of any person,' as provided in Rem. Rev. Stat. (Sup.), § 11211b. It therefore is not subject to an inheritance tax."

█ There can be no doubt that these life insurance policies were community personal property at the time of Mrs. Leuthold's death. All of the incidents of ownership attached to the policies belonged to her and her husband equally. This conclusion is supported by our decision in *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P. (2d) 27, 114 A. L. R. 531 (1937), where we said:

"In this state, insurance or the proceeds of insurance are not mere expectancies or choses in action, but are property; and if the premiums are paid by the assets of the community, they constitute community property."

In *In re Towey's Estate,* 22 Wn. (2d) 212, 155 P. (2d) 273 (1945), the husband had, without his wife's consent, changed the beneficiary in each of four policies on his life so that, instead of being payable to her, they were payable to his estate. After he died, the wife attacked the validity of these changes. The trial court awarded the wife the entire proceeds of the policies, but this court, sitting *En Banc,* reversed the judgment, saying:

"In *Occidental Life Ins. Co. v. Powers, supra* (which is distinguishable from the case at bar), we held that a life insurance policy payable to the wife, insuring the husband's life, and the premiums were paid with community funds, was community personal property, in which the wife had a vested interest equal to that of her husband; therefore, despite the right given to him by the policy to change the beneficiary without consent of the beneficiary, the husband could not designate, without his wife's consent, the insured's mother and private secretary as new beneficiaries: That is,

consistent with our prior holdings, while the husband is manager, with power to sell and dispose of community personal property, 'it does not follow that he can *give* it away.' (Italics ours.) *Marston v. Rue,* 92 Wash. 129, 159 Pac. 111.

"For the sake of clarity, we are repetitive. The subject matter (proceeds of four life insurance policies) of this controversy is community property, which, of course, was owned equally by John Thomas Towey and his wife (respondent), as all community property, both real and personal, is owned by both spouses equally. That is, respondent had a vested property right in all of the community property (proceeds of insurance policies and all other assets of the marital community) equal to that of her husband. When the husband died, the assets (insurance proceeds and all other community property) of the marital community should have been applied to payment of debts of the marital community. One half of the community property remaining after payment of debts of the community should have been distributed to respondent widow. The other one half of the community property remaining after payment of debts of the community was subject to testamentary disposition of decedent Towey (Rem. Rev. Stat., § 1342), and that one half should have been distributed pursuant to the terms of his last will and testament, executed January 17, 1943."

(This court recently declined to overrule the *Powers* case in *Aetna Life Ins. Co. v. Brock,* 41 Wn. (2d) 369, 249 P. (2d) 383, because the eight judges were equally divided on the question.)

In *Northwestern Life Ins. Co. v. Perrigo,* 47 Wn. (2d) 291, 287 P. (2d) 334 (1955), we considered it to be settled law that a life insurance policy is property, saying:

"We have also consistently held that insurance is property, and, if paid for by community funds, is community property."

Other decisions to the same effect are: *In re Coffey's Estate,* 195 Wash. 379, 81 P. (2d) 283 (1938); *Lang v. Commissioner of Internal Revenue,* 304 U. S. 264, 82 L. Ed. 1331, 58 S. Ct. 880, 118 A. L. R. 319.

▋ Among the incidents of ownership connected with the six policies involved in the present case was the right to receive the cash value upon surrender of the policies.

These policies were all level-premium, straight life policies, the cash value of which increased each year as specified therein.

This type of policy is both an indemnity and an investment, and is described in Maclean's work on life insurance as follows:

"The level-premium plan, in fact, introduces an entirely new element into the scheme of operation: the invested fund formed by the excess payments. This fund is called the *reserve*, which is rather an unfortunate term since it is really not a reserve in the ordinary commercial sense implying *surplus* but is a fund which the company must maintain if it is to be able to pay all death claims and without which it would be insolvent. Moreover, the existence of this reserve causes a radical change in the true amount and cost of insurance. Comparing a level-premium plan with a yearly-renewable-term policy of the same face amount, we note that under the former, when a policyholder dies, the accumulated reserve on his policy will, of course, be available as part of the 'face amount' payable. Consequently, as the reserve increases, the insurance, or *amount at risk* (face amount *less* reserve), decreases. Thus the increasing death *rate* is offset by a decreasing effective *amount* of insurance, and the cost is kept down to a practicable figure.

"*Investment in the Level-premium Plan.* It is very important to note that under the level-premium plan a policy of $1,000 does not give actual *insurance* of $1,000, (i. e., the company is never 'on the risk' for that amount) but only of $1,000 *less* the policyholder's own accumulated excess payments. It is thus evident, as already pointed out, that the plan is not pure insurance but rather a combination of a decreasing insurance with an increasing investment, the two amounts being computed mathematically in such a way that in any year their *sum* is equal to the 'face amount' payable under the policy. Failure to grasp this simple fact has led to a great deal of misunderstanding of the level-premium plan." Joseph B. Maclean, Life Insurance (New York, 1957), pages 11 and 13.

As indicated in the above quotation from Maclean's treatise, life insurance companies set up an account for each policyholder in the same manner as a savings bank establishes an account for each depositor. As premiums are received, the insured's account is credited annually with the

proper increase in its cash value. If an insured owns a one-thousand-dollar policy which has been in force for several years and has a cash value of six hundred dollars, and then dies, the insurer pays the beneficiary the sum of one thousand dollars. But, contrary to popular misconception, the insurer does not pay the whole one thousand dollars entirely out of its own funds. It pays the six hundred dollars which was owned by the insured at the time of his death (thus wiping out his cash value), plus four hundred dollars from net premiums paid in by other insured persons.

The situation in the present case is no different than if Mr. Leuthold had taken community funds and opened a savings account with a bank in his own name. Assume, further, that at the time of his wife's death the balance in the savings account was approximately the same amount as the total cash surrender values involved in this case. Of course, it would not be contended that the wife's community one-half interest in the bank account would not be taxable on her death whether the husband had or had not exercised his right of withdrawal of the deposit at that time.

It makes no difference whether the community account under the control of the husband is with a bank or a life insurance company. In either case, the rights of the respective contracting parties are governed by the terms of their contracts.

The precise question before us was recently decided by the court of civil appeals of Texas in *Thompson v. Calvert* (Tex. Civ. App.), 301 S. W. (2d) 496. On a stipulation of facts substantially identical with those shown by the record in this case, the Texas court sustained the taxability, for inheritance tax purposes, of half of the cash value of life insurance policies on the husband's life when his wife predeceased him. Since the decision is directly in point, we quote the material portion thereof, which reads as follows:

"We believe that the cash surrender value of the insurance policies in this case was community property.

"In *Womack v. Womack,* 141 Tex. 299, 172 S. W. 2d 307, in a divorce case the Supreme Court held that the cash sur-

render .value of certain policies was community property. In this case there is a determination of what constitutes community property under Article 4619, V. A. C. S., and the meaning of the word property.

"In other cases, primarily concerned with community property rights in the *proceeds* of life insurance policies as distinguished from community rights in the *cash surrender value* of such policies such as *Volunteer State Life Ins. Co. v. Hardin,* 145 Tex. 245, 197 S. W. 2d 105, 107, the Court stated:

" 'It follows that neither Mrs. Hardin nor the community estate acquired any vested interest in the proceeds of these policies, as distinguished from their cash surrender value,

. . .

" 'Whatever right, if any, Hal White Hardin had to share in the cash surrender value of these policies existed only against his father upon a partition of the community estate. The right to demand the cash surrender value of the policies lapsed by the terms of the contract upon the death of the insured. *San Jacinto Building, Inc., v. Brown,* Tex. Civ. App., 79 S. W. 2d 164, par. 4, writ refused. It did not pass into the hands of the beneficiaries named in the policies, and consequently Hal White Hardin is not entitled to recover a part of the proceeds of the policies on the theory that property belonging to him has passed into the hands of the beneficiaries.'

"Since we have concluded that the cash surrender value of the insurance policies in question was community property at the time of decedent's death, consequently one half of such surrender value passed under the will of decedent to her husband, appellant herein, subject to tax. Article 7117, V. A. C. S.; *California Trust Company v. Riddell,* D. C. S. D. Cal. 1956, 136 F. Supp. 7."

In the case last cited in the immediately preceding quotation, the United States district court for the southern district of California, in 1956, held:

"In the State of California a wife has a one-half undivided interest in community property. It is true the husband retains possession and control of community personal property, California Civil Code § 172; but the husband cannot devise the wife's interest in community property, either real or personal, California Probate Code §§ 201, 201.5. She has such an interest in community property that it is possible for her to will away her portion thereof and thus, at

her death, cause a division of the community estate. Probate Code § 202. The fact that the policies in question were retained by the husband and that he had a right to change beneficiaries at will does not mean he could deprive the wife of her community interest therein without her consent. Inasmuch as Katherine Stromberg had a community interest in the policies at the time of her death, it will be the finding of this Court that the Commissioner of Internal Revenue was correct when he determined there should have been included in the gross estate of Katherine Stromberg, deceased, an undivided one-half interest in the cash surrender value of the policies in question."

That decision (with reference to California law) arrives at a conclusion contrary to that reached by the United States district court for the western district of Washington in *Waechter v. United States,* 98 F. Supp. 960 (1951) (affirmed *United States v. Waechter,* 195 F. (2d) 963 (1952)), which followed our decision in *In re Knight's Estate, supra,* in applying a Federal estate tax statute then in effect (Section 811(e)(2) of the Internal Revenue Code, 26 U. S. C. A., § 811(e)(2)). That section of the revenue act of 1942 had the practical effect of abolishing community property rights for purposes of Federal estate taxation (except such part thereof as could be shown to have been received as compensation for personal services actually rendered by the surviving spouse, derived originally from such compensation or from separate property of the surviving spouse). That section was repealed by the revenue act of 1948. (Act of April 2, 1948, chapter 168, Title III, § 351(a), 62 Stat. 116.)

The *California Trust Company* and *Waechter* cases are discussed, the latter somewhat critically, by Thurmon in his treatise *Federal Estate and Gift Taxation of Community Property Life Insurance,* 9 Stanford Law Review 239, March, 1957, at page 270.

Respondent and the *amicus curiae* attempt to distinguish the decision in *Thompson v. Calvert, supra,* on the ground that, under the Texas law, the rights of the wife in community property are greater than they are in this state. That this ground is untenable is shown by the decision of the supreme court of the United States in the cases of *Poe*

*v. Seaborn,* 282 U. S. 101, 75 L. Ed. 239, 51 S. Ct. 58, and *Hopkins v. Bacon,* 282 U. S. 122, 75 L. Ed. 249, 51 S. Ct. 62, in which the community property laws of the two states were held to be substantially the same as to the vested interests of the wife. In considering the Texas statutes on the subject, the supreme court, in the *Hopkins* case, said:

"In view of our decision in *Poe v. Seaborn, supra,* the only matter to be examined here is whether under the community property system of Texas the wife has a mere expectancy, as she would under the law of California (cf. *United States v. Robbins,* 269 U. S. 315), or on the contrary has a proprietary vested interest in the community property such as makes her an owner of one-half of the community income.

"The statutes contain sweeping provisions as to what shall be included in community property. They provide that each spouse shall have testamentary power over his or her respective interest in the community property. In the event of failure to exercise such testamentary power they provide that the property shall go in the first instance to the descendants of the deceased spouse. They provide, as is usual in States having the community system, that the husband shall have power of management and control such that he may deal with community property very much as if it were his own. In spite of this, however, it is settled that in Texas the wife has a present vested interest in such property. (*Arnold v. Leonard,* 114 Tex. 535). Her interest is said to be equal to the husband's. (*Wright v. Hays' Administrator,* 10 Tex. 130). It is held that the spouses' rights of property in the effects of the community are perfectly equivalent to each other. (*Arnold v. Leonard, supra*). These expressions as to the wife's interest are confirmed by the authorities holding that if the husband, as agent of the community, acts in fraud of the wife's rights, she is not without remedy in the courts. (*Stramler v. Coe,* 15 Tex. 211; *Martin v. Moran,* 32 S. W. 904; *Watson v. Harris,* 130 S. W. 237; *Davis v. Davis,* 186 S. W. 775.)

"The applicable statutory provisions are noted in the margin.

"In view of what has been said in *Poe v. Seaborn, supra,* it remains only to say that the interest of a wife in community property in Texas is properly characterized as a present vested interest, equal and equivalent to that of her husband, and that one-half of the community income is

therefore income of the wife. She and her husband are entitled to make separate returns, each of one-half of such income. The judgment of the Circuit Court of Appeals is *Affirmed.*"

Respondent relies on *Warthan v. Haynes* (Tex.), 288 S. W. (2d) 481, in which the supreme court of Texas decided a contest between the heirs of the husband and the heirs of the wife as to the disposition of *the proceeds* of certain insurance policies on the husband's life. Both spouses were dead, the wife having predeceased her husband by some fifteen or thirty minutes. It appears from the decision that the ownership of the cash surrender values was not involved, because the court said:

"The question as to the rights of the parties in any cash surrender values of these policies is not raised and is not therefore passed upon in this opinion."

We are convinced that the rights of a wife in Washington, with respect to community property, are as substantial as those of a wife in Texas, and that the reasoning of the Texas court in *Thompson v. Calvert, supra,* is sound, and that we should adopt it in this case.

This court (as did the supreme court of Texas in *Womack v. Womack*, 141 Tex. 299, 172 S. W. (2d) 307) has recognized that, in a divorce action, the "cash surrender values on life insurance policies" are community property which the court may award to one or the other of the spouses. See *Wills v. Wills*, 50 Wn. (2d) 439, 312 P. (2d) 661 (1957).

That the cash value of life insurance is property was clearly demonstrated by the United States board of tax appeals in *Estate of Louisa Morris Carroll v. Commissioner of Internal Revenue*, 29 B. T. A. 11 (1933). In that case, the husband and wife were residents of Louisiana. The facts presented were, in all other respects, the same as in the case at bar. When the wife died, the commissioner of internal revenue assessed a deficiency in the Federal estate tax because of the omission from the tax return of one half of the cash value of life insurance policies written on the life of the surviving spouse. In sustaining the action of the com-

missioner the board based its ruling on the following reason:

"In its original form a life insurance policy produced no proceeds prior to the death of the insured. At the present time a large number of policies provide for the payment of the principal to the insured or his assigns at the expiration of a fixed period and even the majority of straight life policies provide for cash surrender value at the end of each year in which the contract is in evidence. As to all such policies death is not a prerequisite to a claim for the proceeds of life insurance. The payment of the premiums creates a cash asset that may be realized at the will of the insured, as was the case here where the payment of premiums by the husband resulted in the creation of an asset realizable in cash in the amount of $61,129.64. If this cash surrender value was property, as to which there can be no question, it fell into the community estate on the dissolution thereof by death and one half thereof should be included in the taxable estate of the decedent."

For the reasons stated herein, we are constrained to hold that our decision in *In re Knight's Estate, supra,* was incorrect in holding that the cash surrender value of a life insurance policy is not property "which passes by will or the statute of inheritance." In our opinion, the state in this case is taxing the receipt by Mrs. Leuthold's legatees, pursuant to her will, of her one-half interest in the cash values of these policies (said to be worth approximately thirty thousand dollars), and that, under the provisions of RCW 83.04.010, it is entitled to do so.

Our very recent unanimous *En Banc* decision in *In re Saunders' Estates,* 51 Wn. (2d) 274, 317 P. (2d) 528 (1957), had the effect of overruling the *Knight* case *sub silentio.* In that case (which was filed the day following the reargument in the case at bar), we construed the uniform simultaneous death act as applied to life insurance on the husband's life (the premiums having been paid with community funds), the statutory presumption being that the wife had predeceased the husband. We held that the husband's half of the community interest in the life insurance passed to his estate because he had a vested interest

in one half of the surrender value of the policies in his own right which he could take or dispose of by will. We also held that the wife's vested community half interest in the policies passed first to her administrator and then to her husband as statutory surviving spouse (there being no children). At the time of the wife's death, the policies had not yet matured, so the decision necessarily held that her vested half interest in all the incidents of ownership in the policies (including the cash surrender value) passed to her estate just prior to the husband's death. This result is directly contrary to the decision in the *Knight* case that, in such a situation, on the death of the wife *nothing passed* to the surviving spouse (the insured) *by the statutes of inheritance*.

Therefore, our decision in *In re Knight's Estate, supra,* is hereby expressly overruled.

In view of the conclusion we have reached, we do not find it necessary to consider the effect of the amendment of the statute (Laws of 1949, chapter 218, § 1, p. 710) by adding thereto the word "contract," nor the administrative construction of the statute which has been applied by the tax commission either before or after its amendment.

The judgment of the trial court is reversed, with directions to enter judgment for appellant for the amount of inheritance tax due by reason of the inclusion in the taxable property of Mrs. Leuthold's estate of one half of the cash value of the six policies described in its original judgment.

MALLERY, FINLEY, WEAVER, and OTT, JJ., concur.

HILL, C. J. (dissenting)—This is an inheritance tax case.

The majority opinion says very little about inheritance taxes and who should pay them. It does explore in considerable detail the character of the community interest in life insurance policies, but it fails to explain how any portion of the cash surrender value of such policies passes to anybody by will or inheritance, which is the taxable event. It expressly overrules *In re Knight's Estate* (1948), 31 Wn. (2d) 813, 199 P. (2d) 89.

The author of the *Knight Estate* opinion had some rather forthright views on the matter of inheritance taxes and

the attempt of taxing authorities to make estates liable for a death tax instead of an inheritance tax, in which views I am still proud to have concurred. He said, speaking for the court (p.817), that an inheritance tax is

" . . . an excise or impost laid upon the privilege of receiving property by inheritance; it is a tax on the right or privilege of succession."

A tax is imposed, not because somebody died, but on the right of someone to succeed to the property left by the decedent.

Let us then ask in the present case: Who has succeeded to what? The majority says:

"The state asserted that her [Mrs. Leuthold's] death was a taxable event which passed her half of the community interest in the cash surrender value of the policies to her legatees."

Neither the state in its brief nor the majority in its opinion indicates just how the legatees in Mrs. Leuthold's will are going to realize anything from her one-half interest in the cash surrender value of the policies. Indeed, from my examination of the record and the briefs, I find no statement as to who these legatees may be, and we are forced to proceed in our discussion with nameless legatees, hypothetical as to number.

That the executor will pay the tax in the first instance, does not change the fact that the share of each legatee entitled to share in Mrs. Leuthold's community half of the cash surrender value of the insurance policies on Mr. Leuthold's life will be charged with an inheritance tax (RCW 83.08.060, Rem. Supp. 1943 § 11202, part) on an amount that such legatees have not received and cannot get. The rate of the tax will vary, if the legatees are in different classes. RCW 83.08.020 through RCW 83.08.040.

In a case from this state, *Waechter v. United States* (1951), 98 F. Supp. 960 (affirmed *United States v. Waechter* (1952), 195 F. (2d) 963), the executor of May F. Waechter's estate had included as part of the gross estate the total cash surrender value of the life insurance policies ($21,-

284.75) on the life of her surviving husband. A Federal estate tax ($1,459.33) was paid, based on the value of the wife's community half of the cash surrender value. The executor was held to be entitled to recover the tax paid. The trial judge took a realistic view of the problem, saying (p. 962):

"Under Washington law, the executor is given the right to the possession or management of all the real and personal property of the deceased, and to receive the rents and profits of the real estate until the estate is settled. Remington, Revised Statutes, Sec. 1464. It is made his duty, within one month after his appointment, to return a true inventory of 'all the property of the estate which shall have come into his hands', and to apply to the Court for the appointment of appraisers to appraise the property so inventoried. Remington, Revised Statutes, Sec. 1465.

"In the case of a life insurance policy upon the life of the husband, there is no provision in the law of the State of Washington for *liquidating any interest which the wife may have had in the property*. Granted that the policy has a possible cash surrender value, there is no provision in law for reducing it to the possession or control of the wife's executor. He cannot compel the husband to cancel the policy, in order that its surrender value might be equally divided between the estate and the husband. And the surrender value remains in the realm of possibility, unless there be power to *compel* surrender."

The majority cite and quote from *California Trust Co. v. Riddell* (1956), 136 F. Supp. 7, a case from the southern district of California, which reached a result contrary to the *Waechter* case. It is interesting to note that Judge Hamlin, in a very recent case in the northern district of California, considered both the *Riddell* and *Waechter* cases and was "more persuaded" by the reasoning in the *Waechter* case. See *Stewart v. United States* (Dec. 18, 1957), 158 F. Supp. 25. All three cases are concerned with Federal estate taxes. I have heretofore tried to make clear, perhaps with indifferent success, that there is a difference between an estate tax and an inheritance tax. Under our inheritance tax statute before property can be subject to a tax, it must pass

". . . by will or by the statutes of inheritance . . . or by deed, grant, sale, contract or gift made in contemplation of the death of the grantor, or donor, or by deed, grant or sale, contract or gift made or intended to take effect in possession or in enjoyment after death of the grantor, or donor, to any person in trust or otherwise . . . " RCW 83.04.010.

As intimated in *Windust v. Department of Labor & Industries* (1958), *ante* p. 33, 323 P. (2d) 241, it is well to give some consideration to the terms of the statute with which we are concerned. It is my purpose to demonstrate that Mr. Leuthold is the only person who has received the benefit of Mrs. Leuthold's interest in the cash surrender value of the insurance policies; and to demonstrate further that he did not receive it (a) by will, (b) by inheritance, or (c) by a contract made in contemplation of the death of the grantor or donor.

The fact, unwelcome (to the inheritance tax and escheat division) but indisputable, is that, in so far as the cash surrender value of these insurance policies is concerned, the only person who has received any benefit is Mr. Leuthold, and he has received it not because he was a legatee or an heir, but because of the nature of the contract of insurance.

That he takes no interest as a legatee, is easily demonstrated. Let us assume that Mrs. Leuthold left all of her personal property in equal shares to three legatees, and that Mr. Leuthold was not one of them; Mr. Leuthold would be in exactly the same position he is in today, he would have all the cash surrender value of the insurance policies, but certainly not because he was a legatee.

If we follow the logic of the majority opinion, we must say that, since the cash surrender value of the policies involved in this estate, and with which we are here concerned, was in excess of sixty thousand dollars, Mrs. Leuthold's community interest was in excess of thirty thousand dollars; and each of her three legatees should be taxed on a legacy in excess of ten thousand dollars, despite the fact that none has any prospect of receiving it; and Mr. Leuthold is the only person benefited.

If there were no will, it is equally easy to demonstrate that Mr. Leuthold would take nothing by inheritance. Assume Mrs. Leuthold died without a will, leaving three children; the three children would, under our statute of inheritance (RCW 11.04.050), divide her half of the community property between them. Mr. Leuthold would be in exactly the same position he is in today, he would have all the cash surrender value of the insurance policies, but certainly not because he inherited Mrs. Leuthold's interest in the community property.

Again, following the logic of the majority opinion, we must say that since the cash surrender value of the policies, with which we are here concerned, was in excess of sixty thousand dollars, Mrs. Leuthold's community interest was in excess of thirty thousand, and each of her three children should be taxed on an inheritance in excess of ten thousand dollars, which they have no prospect of collecting. Mr. Leuthold still is the only person benefited.

I do not say that it would not be proper to impose a tax on what he has received, but it is for the legislature to determine whether such a transfer of interest should be taxed, not for the court to impose a tax on such a transfer on what seems to me the completely untenable theory that he has received it by will or by inheritance.

The *Knight* case did not hold that a wife had no community interest in the cash surrender value of life insurance policies. It held, and I believe properly, that the interest, whatever its character, did not pass by will or by the statute of inheritance, but that it passed to her husband by the contract of insurance; and there was nothing in our inheritance tax law that made such a transfer of interest taxable.

The inheritance tax and escheat division attempted to make it possible to reach cash surrender value by adding the word "contract" to the statute setting forth the property subject to an inheritance tax. Laws of 1949, chapter 218, § 1, p. 710, reads in part as follows:

"All property within the jurisdiction of this state, and any interest therein, whether belonging to the inhabitants

of this state or not, and whether tangible or intangible, which shall pass by will or by the statutes of inheritance of this or any other state or by deed, grant, sale, *contract* or gift made in contemplation of the death of the grantor, or donor, or by deed, grant or sale, *contract* or gift made or intended to take effect in possession or in enjoyment after death of the grantor, or donor, to any person in trust or otherwise . . . shall, for the use of the state, be subject to a tax." (Italics mine.)

The majority by-pass the contract theory entirely. It is my view that the amendment, adding the word "contract" as above indicated, did not accomplish the result desired by the inheritance tax and escheat division. The contracts referred to in the statute are the contracts of a deceased person, which were made in contemplation of death and in which it was intended that the death of the contracting party would constitute the event which passed the property treated in the contract from the deceased to someone else.

It is contended by the inheritance tax and escheat division that we should follow the administrative construction that has been placed upon the statute, *i. e.*, a construction which would make the surviving husband liable for the tax on the wife's half interest in the cash surrender value of the insurance. We have repeatedly said there is no room for construction where the intention of the legislature is clear and the language of the statute is unambiguous. *Sandona v. Cle Elum* (1951), 37 Wn. (2d) 831, 226 P. (2d) 889; *Martin v. Tollefson* (1945), 24 Wn. (2d) 211, 163 P. (2d) 594. The language of the statute will not bear the administrative construction placed upon it.

To summarize: It is my view that no interest in the cash surrender value of the insurance policies involved in this case passed by will or inheritance; that a tax imposed on Mrs. Leuthold's legatees, based on the assumption that something of value passed to them, is completely unjustified; that the interest therein received by Mr. Leuthold was by reason of the contract of insurance. I do not deny that Mr. Leuthold's position has been improved. I do deny

that the inheritance tax statute covers such an interest as he has received, and whether it does or does not should be the only issue in this case.

If such an interest should be taxed, the matter can be submitted to the legislature fairly and clearly as a tax on the transfer of the decedent's interest in the cash surrender value of insurance carried on the life of a person other than the decedent.

It should be noted that such a tax has been a "departmental request" in the 1949, 1951, 1953, and 1955 sessions of the legislature, but that the legislature has failed each time to take action on such "departmental request"; sometimes letting the bill die in committee, and sometimes voting it down.

I would leave legislation to the legislature, particularly the imposition of taxes.

I dissent.

ROSELLINI and HUNTER, JJ., concur with HILL, C. J.,

FOSTER, J. (concurring in the dissent)—I concur in the views of Chief Justice Hill. The construction placed upon this statute by *In re Knight's Estate*, 31 Wn. (2d) 813, 199 P. (2d) 89, became as much a part of the statute as if the words had been added by legislative enactment. *Winters v. New York*, 333 U. S. 507, 92 L. Ed. 840, 68 S. Ct. 665. Subsequent change is exclusively a legislative prerogative. After the legislature has four times rejected proposals to overturn the rule of the *Knight* case, the court should not now do so. My reasons for this conclusion are stated in detail in *Windust v. Department of Labor & Industries, ante* p. 33, 323 P. (2d) 241.

---

July 3, 1958. Petition for rehearing denied.