[No. 36841. En Banc. March 5, 1964.]

FRANCES LOUISE NEELEY, *Respondent*, v. JOHN D. LOCKTON et al., *Defendants*, DORA CHRISTINE GARCIA, *Appellant.**

*Rembert Ryals*, for appellant.

*George C. Butler* and *Butler & Yencopal*, for respondent.

*Reported in 389 P. (2d) 909.

930

Finley, J.—This is an action instituted under the Declaratory Judgment Act to resolve a conflict between the beneficiary designation made by Cecil A. Neeley, now deceased, in (1) a company pension plan and (2) provisions made by him relative to property disposition in a subsequent community property agreement.

Cecil A. Neeley was employed by the General Electric Company for a period of 13½ years, beginning on September 1, 1946, and ending with his death on February 18, 1960. During this entire period, he made contributions by payroll deduction to a pension plan, set up by the General Electric Company to provide for the retirement of its employees. This plan, entitled the "General Electric Pension Trust," provided for retirement rights upon the completion of 15 years of service with the company. For those who died or otherwise terminated employment prior to the expiration of 15 years, the plan provided for the payment in lump sum of the aggregate amount of the employee's contributions, plus interest, to the employee or to his designated beneficiary, such as the case might be.

The beneficiary designation of the person who would receive the funds if the employee died was made by each employee on a card provided for that purpose by the company. Any person could be designated, and the designation could be changed at will. The only restriction placed upon this free choice of beneficiary concerned the manner in which the company and the trustees were notified of any such change. The plan provided:

"Section XXI. . . . (2) (a) An employee, before or after his retirement, may from time to time change the beneficiary designated by him under the provisions of Section X, without the consent of any such beneficiary, by filing written notice thereof with the Pension Board in a manner prescribed by the rules of the Pension Board as from time to time in effect. . . ."

The genesis of the problem in the present case is probably traceable to the gregarious nature of the decedent. During the time he was employed under the plan, Mr. Neeley participated in three separate marriages. He married Jewell

O. Neeley (now Jewell O. Hadley) on May 28, 1939, and was divorced on August 11, 1955; he married Dora C. Garcia (defendant-appellant) on February 14, 1956, from whom he was divorced on June 17, 1957; he married Frances L. Neeley (plaintiff-respondent) on August 5, 1957, and was married to her at the time of his death.

During his first marriage, Neeley designated his first wife, Jewell, as the beneficiary of the company plan. After his second marriage, he changed the beneficiary to his second wife, Dora. Although he took a third wife, Frances, after divorcing Dora, the designation of Dora as the beneficiary was never changed, and the records of the company showed Dora as the designated beneficiary at the time of the death of Cecil A. Neeley.

However, during the third marriage, the decedent and his third wife, Frances, entered into a community property agreement which followed the statutory requirements. By its terms all property of both spouses was declared to be community property; it was further stated in the agreement that upon the death of either spouse all property would pass to the survivor.

Upon the death of Neeley, the General Electric Company paid into court the lump sum to which Neeley was entitled under the terms of the "General Electric Pension Trust" plan, the amount to be distributed to the parties entitled thereto in accordance with court determination. An appreciable portion of the fund contributed by the decedent is no longer in controversy, the disposition of it having been stipulated to by the two ex-wives and the widow. The theory underlying this stipulation is that the funds contributed during the period of each marriage were community property when paid into the fund, and that each wife, when her marriage to the decedent was dissolved, became entitled to one half of such community property as accrued during her marriage. The only funds in controversy are those contributed during the intervals when decedent was single, and the one half to which he became entitled as his separate property upon the failure of either divorce decree to mention the pension trust funds. The

funds in controversy then may be classed as the separate property of the decedent, at least up until the date of the community property agreement with the third wife.

The first wife, Jewell, was dismissed from the suit after the stipulation fulfilled her aspirations to the fund. The widow Frances seeks, by this declaratory judgment action, to establish her right to the remaining funds because of the community property agreement, which, by its reference to *all* property of the spouses, necessarily included the property of the husband in the pension fund. The ex-wife, Dora, bases her claim to these funds, of course, upon her position according to the company or pension fund records as the last designated beneficiary.

The problem which faces this court is thus a conflict between contract law and community property law. Any characterization of the problem as solely one of either contract law or community property law would be incomplete and inappropriate. Reasonable resolution of the conflict must depend on an over-all evaluation of the interests represented.

■ It may, however, be stated that the general rule in Washington is that contracts, and particularly beneficiary designations, will control only to the extent that they are not inconsistent with the community property law. In *Wilson v. Wilson* (1949), 35 Wn. (2d) 364, 212 P. (2d) 1022, an insurance policy on the life of the deceased husband designated his sister as beneficiary of one fifth of the policy proceeds. Faced with this same problem of conflict between community property rules and a beneficiary designation, we there said:

"We start with the concept that the contract between the insured and the insurance company is valid, and that the proceeds should be distributed in accordance with the terms of the policy except to the extent that the community property law intervenes and prevents such distribution. . . .

" . . . And only in that event [a conflict with community property law] have we recognized that the representative of the community estate, usually the surviving spouse, has a right superior to that of the named beneficiaries to all or a portion of the proceeds of the policy."

The community property agreement, which is solely a creature of the community property law of this state, was created by RCW 26.16.120, the pertinent part of which provides:

"Nothing contained in any of the provisions of this chapter or in any law of this state, shall prevent the husband and wife from jointly entering into any agreement concerning the status or disposition of the whole or any portion of the community property, then owned by them or afterwards to be acquired, to take effect upon the death of either. . . ."

█ This statute is part of the community property law of this state, and provides clear authority for an agreement between spouses disposing of any property interest which is community property. The dispositive device created by this statute was extended in permissible scope to include all property interests of either the husband or the wife in *Volz v. Zang* (1920), 113 Wash. 378, 194 Pac. 409, which held that the separate property of either spouse could be converted to community property by agreement. The community property agreement can, therefore, control the disposition of both community property and the separate property of either spouse, the latter by converting the separate property to community property for purposes of the instrument. *In re Brown's Estate* (1947), 29 Wn. (2d) 20, 185 P. (2d) 125.

The real issue here is thus a clear-cut one. The decedent had entered into a contract with the pension trust, or the company, not as to who should be the beneficiary of the refund payments, but rather *how* he should designate that beneficiary. The Washington Legislature has also provided *how* a person can designate the beneficiary to all of his property interests. The decedent used both of the methods alluded to, but with inconsistent results. As the community property rules of this state will control over inconsistent contracts, the sole question presented here is the meaning and scope of RCW 26.16.120; that is, the effect that the legislature intended be given to the community property agreement.

No case has been found or cited by counsel where the beneficiary designation in an instrument or contract was in conflict (as to the ultimate taker) with the *particular* community property rule involved here. The cases such as *Wilson v. Wilson, supra,* and *Occidental Life Ins. Co. v. Powers* (1937), 192 Wash. 475, 74 P. (2d) 27, which established the principle that community property law prevailed over the designations of beneficiaries in life insurance contracts, involved circumstances where the policy benefits had been purchased with contributions made during the marriage. The wife in each of those cases had a vested right in the contributions solely because of her marriage; and to allow the husband to designate third party beneficiaries would have deprived the wife of funds which were the product of her marriage community. In the present case, this particular consideration is absent, as the rights of the wife are dependent upon the community property agreement as it affects contributions which were not made during her own marriage.

The basic consideration behind RCW 26.16.120, then, is one of providing the community with a simple and certain way of disposing of the community property upon the death of either spouse. While this goal is somewhat different in nature from the basic policy of protecting the existing interests of the wife in the community property during her life, it is nonetheless a vital element of the structure of community property law. The purpose or policy of the legislature should be given full force and effect by according reasonable legal amplitude, scope and effect to the community property-agreement device. Not the least significant is the legislative choice of the words, "whole or any portion of," evidencing an intent that the scope of this device be all-inclusive, and the effect it must have upon the reasonable expectations of the parties entering such an agreement. When the husband and wife enter a statutory agreement which purports on its face to control the disposition of their property, and expressly includes any and all property of either of them, be it separate or community, each of them has the right to rely on the assertion that the

other has not reserved any interest he owns by a previous inconsistent beneficiary. designation. Indeed, the spouse who has made previous designations has the right to assume that no lapse of memory can set at naught his present purpose. Such considerations undoubtedly motivated the legislature in providing express statutory authority to enter such agreements rather than to leave them within the uncertain area surrounding contracts to make a will.

■ In contrast to this purpose, the contract with the company concerning how beneficiary designations should be made seems to protect far lesser interests. The designation made upon the company form, invariably entered it would seem with far less formality and forethought than a community property agreement, can serve no greater purpose than to keep the company informed as to who should be paid the proceeds in the event of death. Despite the obvious convenience in administration there involved, it seems a superior choice to disregard the administrative convenience of ascertaining possible claimants to the fund in order to assure a higher degree of utility in the dispositive device represented in the community property agreement.

Reading the statute in the light of its basic purpose, the increasing prevalence of the community property agreement, and the pressing need for certainty in this area of the law, the decision of the trial court that the community property agreement controlled the disposition of the property interest of the husband in the company pension plan should be affirmed. It is so ordered.

HILL, WEAVER, HAMILTON, and HALE, JJ., concur.

DONWORTH, J. (concurring in the result)—I concur in the result, but I think that two of our prior decisions cited in the majority opinion, namely *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P. (2d) 27 (1937), and *Wilson v. Wilson,* 35 Wn. (2d) 364, 212 P. (2d) 1022 (1949), should be overruled for the reasons stated in the dissenting opinions in *Toulouse v. New York Life Ins. Co.,* 40 Wn. (2d) 538, 245 P. (2d) 205, (1952).

The two cited cases are distinguished from the instant case in the majority opinion. Nevertheless, I wish to avoid any inference that by my concurrence I am approving or relying upon the rules of law stated therein.

HUNTER, J. (dissenting)—The majority characterize the "real issue" in this case as a conflict between contract law and community property law. I see no conflict between the contract entered into by the decedent with the pension trustees of the General Electric Company, and the community property law of this state.

The majority opinion reasons that the word "all" in the community property agreement necessarily included the husband's interest in the pension trust contract, and the community property agreement must control its disposition. With this I agree, except for the fact that the separate property of the decedent acquired prior to the execution of the community property agreement was encumbered with certain contractual provisions which could not be wiped out by the unilateral conduct of the decedent.

The decedent's property was transmuted from separate property to community property under *Volz v. Zang,* 113 Wash. 378, 194 Pac. 409 (1920), for the purposes of the community property agreement. However, the funds in controversy were encumbered with a detailed trust agreement that provided the *only* manner a beneficiary could be designated to receive this fund. The majority treat these provisions as being in "conflict" with community property law. They rely on *Wilson v. Wilson,* 35 Wn. (2d) 364, 212 P. (2d) 1022 (1949), and *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P. (2d) 27 (1937), to resolve this purported conflict. It is admitted, however, that the particular considerations found in those cases are not applicable here. In those cases, the court held that the wife could not be deprived of her interest in community property by a beneficiary designation in favor of a third party. The underlying policy reason behind those decisions is that the wife helped create the community property, and she should not be

deprived of her interest by an act of her husband. *Marston v. Rue,* 92 Wash. 129, 159 Pac. 111 (1916).

It is my view that there are no prevailing public policy considerations or applicable community property laws which require that these funds, which were contributed to the trust prior to the execution of the community property agreement, should be considered in the same light as property which has been accumulated subsequent to marriage. The pension trust contract should control.

The instant case is analogous to a change of beneficiary in a life insurance contract, and the reasoning found in the construction of life insurance contracts is applicable here. The basic rule is stated in 29A Am. Jur., Insurance § 1678:

" . . . it is well settled that the insurer may, as a matter of contract and by appropriate stipulation or condition expressed in the policy, prescribe or regulate the method of changing beneficiaries, and ordinarily a change of beneficiary can be accomplished only in the manner pointed out in the policy, with the result that an attempt to make such change in any other manner is ineffectual. . . ."

This court has said that provisions in a life insurance policy relating to a change of beneficiary are valid and must be substantially complied with. Mere intent alone to effect a change of beneficiary is not enough. *Sun Life Assur. Co. of Canada v. Sutter,* 1 Wn. (2d) 285, 95 P. (2d) 1014, 125 A.L.R. 1089 (1939). In the *Sutter* case, an unsigned notice of change of beneficiary was mailed to the insurance company. We held that this constituted a substantial compliance with the requirements of that contract for a change of beneficiary. In the instant case, no notice whatsoever was delivered to the pension board trustees for a change of beneficiary. The mere execution of a community property agreement does not constitute a substantial compliance with the contractual provision for a change of beneficiary, even though it might be evidence of an intention to do so. The majority opinion will upset the established law relative to the change of beneficiaries in life insurance con-

tracts, and will *sub silentio* overrule the rationale of the *Sutter* case.

The judgment of the trial court should be reversed and the cause remanded with directions to enter judgment awarding the interpleaded funds to the defendant, except as otherwise stipulated by the parties.

OTT, C. J., and ROSELLINI, J., concur with HUNTER, J.

June 15, 1964. Petition for rehearing denied.