[No. 7546–2–I.   Division One.   November 10, 1980.]

ELAINE I. BROWN, *Appellant,* v. THE BOEING COMPANY, *Respondent.*

*Creighton & Scott* and *Robert P. Schmitt,* for appellant.

*M. Margaret McKeown,* for respondent.

CALLOW, C.J.—This is an action for declaratory judgment. Elaine Brown appeals from a summary judgment denying her claim to survivor's benefits under the Boeing Company Employee Retirement Plan (the "Plan").

Roger and Elaine Brown were husband and wife. Mr. Brown worked at Boeing for 28 years. He retired on August 1, 1977. Upon retirement a qualified Boeing employee can elect to receive his pension under a straight–life or joint and survivor method. Under the straight–life method payments cease upon death of the retiree. Under the joint and survivor method, a lesser monthly amount is received but payments continue upon the death of the retiree so long as his spouse survives.

Each employee receives a booklet which explains the retirement plan. The employee can select straight–life, 100 percent joint and survivor, 75 percent joint and survivor, or 50 percent joint and survivor. The booklet and the written form used to make the election inform the employee that if no election is made the 50 percent joint and survivor option will automatically be effective. The booklet explains the financial impact of the several options.

Because the Joint & Survivor method makes payments for the life spans of two people instead of one, the length of time in which payments are likely to be made is greater than under the Straight–Life method. Therefore, the amount of the monthly payments to the retiree on a Joint & Survivor basis is less than under Straight–Life.

Here is a comparison of how benefits totaling $100.00 per month on a Straight–Life basis would be paid under each of the Joint & Survivor methods to a male employee retiring at age 63 whose wife is 61:

|  | Monthly amount to retiree prior to retiree's death | Monthly amount to spouse after retiree's death |
|---|---|---|
| Straight–Life | $100.00 | 0 |
| 100% Joint & Survivor | 74.66 | $74.66 |
| 75% Joint & Survivor | 79.71 | 59.78 |
| 50% Joint & Survivor | 85.49 | 42.75 |

Roger Brown retired on August 1, 1977. He selected the straight–life method. Elaine Brown learned of the election prior to August 1, 1977, and vigorously objected to her husband. Although he agreed to change the designation, he never did so. Neither did Mrs. Brown contact Boeing. Mr. Brown was a borderline diabetic and an alcoholic. He died in October of 1977 and payments ceased. Elaine, his wife, survives him.

In 1975 the parties had executed a community property agreement.

On appeal Mrs. Brown raises issues concerning the effect of the community property agreement, her husband's authority to select the straight–life payout option, and compliance with the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.* We first address the effect of the community property agreement.

Mrs. Brown relies on *Neeley v. Lockton,* 63 Wn.2d 929, 389 P.2d 909 (1964), and argues that the community property agreement should control over the pension disposition made by Roger Brown.

A community property agreement is a creature of statute. RCW 26.16.120. Such an agreement may be used to

convert the separate property of either spouse to community property and to control the disposition of that property upon the death of either spouse. *Neeley v. Lockton, supra.* The agreement entered into by the Browns provided that all property then held or thereafter acquired by either spouse was community property. It also provided that upon the death of either spouse, all such community property would vest in the surviving spouse. In *Neeley v. Lockton,* a similar agreement had been entered into between decedent Cecil Neeley and his third wife. Neeley's pension benefits, earned prior to his marriage, thus became community property. He had, however, previously named his second wife as the beneficiary of the plan and had neglected to change the designation when he remarried. The issue before the court was whether the community property agreement, vesting all property in one spouse upon the death of the other, controlled over the beneficiary designation made prior to the community property agreement. That issue is not present in our case. In *Neeley,* the court held that the pension designation, which would have caused community property to be distributed to a third party, must yield to the community property agreement which vested all community property in Neeley's third wife. Here, the selection of the straight–life pension option was not inconsistent with the community property agreement. All of the property did vest in Mrs. Brown upon Mr. Brown's death.

By the straight–life selection Mr. Brown chose to have the community receive the sum of $275.97 as long as he survived. Community property agreements can control the "disposition . . . of the community property . . . to take effect *upon the death of either [spouse].*" (Italics ours.) RCW 26.16.120. By its terms the statute does not apply to disposition of assets prior to death except insofar as separate property becomes community property. Neither does the agreement entered into here purport to control pre-death disposition of community property beyond declaring that all the Browns' property was community. In short, the community property agreement has no effect on this case

because it is agreed that the pension was a community asset. We turn to the question of Mr. Brown's authority to select the payout option.

Mrs. Brown contends that her husband had a fiduciary obligation to act in the best interest of the other spouse. *Marston v. Rue,* 92 Wash. 129, 159 P. 111 (1916). She asserts that by making a disposition of her share of the pension, he worked a constructive fraud which Boeing was an accessory to by not requiring her consent and that such attempted disposition of a community asset was void ab initio. *In re Estate of Yiatchos,* 60 Wn.2d 179, 373 P.2d 125 (1962), *modified,* 376 U.S. 306, 11 L. Ed. 2d 724, 84 S. Ct. 742 (1964).

RCW 26.16.030 provides in part:

Either spouse, acting alone, may manage and control community property, with a like power of disposition as the acting spouse has over his or her separate property . . .

The exceptions to this provision are (1) testamentary gifts, (2) gifts, (3) sale or encumbrance of real estate, (4) purchase of real property, (5) creation of a security interest in household goods, furnishings or appliances, and (6) certain business transactions. RCW 26.16.030(1), (2), (3), (4), (5), (6). The selection of a pension payout option does not fall within the exceptions so long as the community remains the beneficiary.

The cases relied on by Mrs. Brown deal with attempts to make a gift of community property. In *Marston v. Rue, supra,* the husband attempted to give his mistress the use of an automobile which was community property. The court held that the husband's statutory power to manage community property did not authorize him to give it away.

In *In re Estate of Yiatchos, supra,* the husband purchased United States savings bonds with community funds. The bonds were payable only to him, or, upon his death, to his brother. The court held that the designation of his brother as beneficiary was a unilateral attempt to convert community property to separate property and was void ab

initio. If a spouse could make a testamentary gift by purchasing savings bonds, "a designing spouse could at once transform community property into separate property . . ." *In re Estate of Yiatchos, supra* at 181, quoting *In re Estate of Allen,* 54 Wn.2d 616, 343 P.2d 867 (1959).

Contrary to Mrs. Brown's contention, the pension election here was not an attempt to make a gift or bequest of community property, nor did it transform community property to separate property. RCW 26.16.030 gave Mr. Brown the authority to manage the pension. Although no Washington cases deal with this exact question, an analogy can be drawn with insurance policies purchased with community funds. It is clear that a spouse cannot convert community property to separate property by naming a third party as beneficiary. *Francis v. Francis,* 89 Wn.2d 511, 573 P.2d 369 (1978). A life insurance policy can, however, often be cashed in or converted to an annuity during the insured's life. A spouse has the authority to surrender a life insurance policy for cash. *Page v. Prudential Life Ins. Co. of America,* 12 Wn.2d 101, 120 P.2d 527 (1942). In effect, Mr. Brown was contracting for an annuity when he elected to retire. His selection of the straight–life pension payout did not come within the statutory exceptions and therefore was not void. The selection did not designate a third party as beneficiary upon Mr. Brown's death. Rather, upon the death of Mr. Brown, there was no further right to payments. Under these facts, the community would have benefited more had a joint–survivor option been selected. On the other hand, had Mrs. Brown died before her husband, the selection of a joint–survivor option would have been contrary to the best interests of the community.

Moreover, Mrs. Brown knew of her husband's election, and although she complained to him, she did not notify Boeing. Instead she accepted the receipt, by the community, of the higher pension payments. Even if her consent were needed, her knowledge of the election and acceptance of its fruits constitutes an estoppel. *See Louron*

*Indus., Inc. v. Holman,* 7 Wn. App. 834, 840, 502 P.2d 1216 (1972); *Sander v. Wells,* 71 Wn.2d 25, 426 P.2d 481 (1967).

Mrs. Brown finally claims the pension election was void because her husband was not provided with sufficient information as to its effect as required by ERISA. 29 U.S.C. § 1055(e).

ERISA requires that a pension plan provide the employee with a "written explanation of the terms and conditions of the joint and survivor annuity and the effect of an election . . . not to take such joint and survivor annuity." 29 U.S.C. § 1055(e) provides:

> (e) Election to take annuity
> A plan shall not be treated as satisfying the requirements of this section unless, under the plan, each participant has a reasonable period (as prescribed by the Secretary of the Treasury by regulations) before the annuity starting date during which he may elect in writing (after having received a written explanation of the terms and conditions of the joint and survivor annuity and the effect of an election under this subsection) not to take such joint and survivor annuity.

There was ample evidence that Boeing complied with this requirement. The summary booklet given to employees explained the options and had a chart comparing the benefits of the several options. The supervisor of retirement counseling stated by affidavit:

> In March 1977, Roger W. Brown, a Plan participant, first visited the Boeing Retirement Office at which time he was provided with an estimate of monthly retirement benefits, including the effect of the various joint and survivor options and the straight–life method of payment.

Thereafter, Brown elected in writing not to take the joint and survivor annuity. This constituted substantial evidence of compliance with ERISA.

There is no evidence that Boeing failed to comply with ERISA. Mrs. Brown's own affidavit established that both she and her husband were aware of the several options when her husband selected the straight–life payout. In addition, this section of ERISA is designed to inform the

employee of his right to *reject* the joint and survivor annuity. The very fact that he did reject it is evidence that he was informed of that right.

The judgment is affirmed.

DORE and DURHAM, JJ., concur.

Reconsideration denied December 11, 1980.

Review denied by Supreme Court March 13, 1981.